**RAMIREZ & FERAUD CHILI CO., a copartnership composed of Frank Feraud and E. C. Feraud, Plaintiff,**

v.

**LAS PALMAS FOOD COMPANY, Inc., a corporation, Pablo Baca Gavaldon, and Ralph Worthington, Defendants.**

No. 19355.

United States District Court
S. D. California, Central Division.

Nov. 8, 1956.

Harris, Kiech, Foster & Harris, Ford Harris, Jr., Warren L. Kern, Walton Eugene Tinsley, Los Angeles, Cal., for plaintiff.

Mason & Howard, Paul P. Selvin, Los Angeles, Cal., for defendants.

MATHES, District Judge.

By this action plaintiff seeks an injunction restraining further alleged infringement and unfair competition in the use of plaintiff's trade-mark and trade name "Las Palmas"; also three-fold damages and other equitable relief.

The original jurisdiction of this court is invoked under the Trade-Mark Act of 1946—the Lanham Act. 60 Stat. 427 (1946), 15 U.S.C.A. §§ 1051–1127; 28 U.S.C. § 1338(a). Pendent jurisdiction of related claims of unfair competition is invoked under 28 U.S.C. § 1338(b). Cf. Hurn v. Oursler, 1933, 289 U.S. 238, 240–243, 248, 53 S.Ct. 586, 77 L.Ed. 1148.

Plaintiff has moved for a preliminary injunction [Fed.R.Civ.Proc. Rule 65, 28 U.S.C.], and defendants have interposed a motion to dismiss for lack of jurisdiction over the subject matter or, in the alternative, for failure to state a claim upon which relief can be granted. Id. Rule 12(b) (1), (6). Both sides have filed affidavits and counter affidavits in support of and in opposition to the motions.

Jurisdiction is the threshold issue in every case in the federal courts, Mansfield C. & L. M. Ry. v. Swan, 1884, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462, so the first question is whether the facts exist "upon which the court's jurisdiction depends". Fed.R.Civ.Proc. Rule 8(a); cf. Gibbs v. Buck, 1939, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111.

Diversity jurisdiction is not claimed; nor does the requisite diversity of citizenship exist. City of Indianapolis v. Chase National Bank, 1941, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47. If plaintiff asserts an actionable claim under the Lanham Act for infringement or unfair competition in the use of a trade-mark or trade name, jurisdiction is expressly conferred upon this court "without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." 15 U.S.C.A. § 1121.

Upon a motion to dismiss for want of jurisdiction, the court may weigh affidavits and other evidence in determining the existence or non-existence of requisite jurisdictional facts. Land v. Dollar, 1947, 330 U.S. 731, 735, note 4,

67 S.Ct. 1009, 91 L.Ed. 1209; see Fed. R.Civ.Proc. Rules 43(a, e), 41(b), 52(a).

Here all issues as to the jurisdictional facts can be resolved by weighing the affidavits along with the allegations of the verified amended complaint. See Williams v. Minnesota Min. & Mfg. Co., D.C.S.D.Cal.1953, 14 F.R.D. 1.

The facts alleged in the amended complaint, and found to be true for the purposes of the pending motion to dismiss, are briefly these:

Plaintiff is owner of the valid and subsisting United States trade-mark "Las Palmas", which in 1940 was registered by plaintiff in the United States Patent Office under the Trade-Mark Act of 1905, and in 1949 republished under the Trade-Mark Act of 1946 pursuant to § 12(c) thereof, 15 U.S.C.A. § 1062(c).

In 1954 the requisite affidavit was timely filed with the Commissioner of Patents, and thereupon plaintiff's registration of the trade-mark "Las Palmas" became incontestable by virtue of § 15 of the Act. Id. § 1065. Plaintiff's registrations of the mark in the United States are No. 379,295 and No. 582,054.

Plaintiff adopted and has long used the registered trade-mark "Las Palmas" for various canned Spanish foods and sauces. Since 1922 plaintiff has employed the mark in the sale of such goods in local and interstate commerce within the United States; and since 1948 in foreign commerce between the United States and the Republic of Mexico.

These food products have been advertised for the past thirty years in the United States, and for the past five years in Mexico. As a result of advertising and sales in the United States and Mexico, plaintiff has developed a valuable good will associated with the trademark and trade name "Las Palmas" and plaintiff's label as well, both in this country and in Mexico, and more especially in the border towns of Baja California, such as Mexicali, Tijuana and Ensenada.

When in 1953 defendant Las Palmas Food Company, Inc. was incorporated as a California corporation, with a place of business at Los Angeles in this District, defendant Worthington, an American citizen and resident of this District, chose the name Las Palmas with full knowledge of plaintiff's registered United States trade-mark and with the intention of appropriating the good will associated with that mark and that name. Defendant Gavaldon, a citizen of Mexico and resident of this District, and a former customer of plaintiff, also had knowledge of plaintiff's prior use of the mark and name and of the good will associated with both mark and name.

Later in 1953, for the purpose of appropriating to themselves plaintiff's good will in the "Las Palmas" trade-mark in Mexico, defendants caused to be filed an application to register the trade-mark in Mexico under the name of Fernando de La Pena of Tijuana, Baja California, Mexico; which registration issued under No. 76,068 on October 28, 1953, and was thereafter assigned to defendant Gavaldon.

In 1955, using plaintiff's label as a model, defendants caused to be printed within this District a "Las Palmas" label for chili sauce which embodies not only the identical trade-mark, but also the exact colors of plaintiff's label and the same format, style of printing and similar layout and design; and is in effect a deliberate counterfeit of plaintiff's label.

Quantities of this counterfeit label, and of cans and cartons as well, all procured within the territorial jurisdiction of this court, were transported by defendants across the border into Mexico; and defendants then commenced to pack in Mexico a red chili sauce, in cans identical in size and shape to plaintiff's and bearing the counterfeit label with the "Las Palmas" trade-mark; and thereafter sold this product in Mexico, particularly in border towns such as Tijuana and Mexicali, where plaintiff's "Las Palmas" red chili sauce is popular.

It has long been the practice of persons of Mexican origin or descent residing in the border cities on the American side, such as Calexico and San Diego, in California, to purchase many of their

groceries, including plaintiff's "Las Palmas" products, in the corresponding Mexican border cities of Mexicali and Tijuana, and freely to carry such groceries back to their homes in the United States, where such food products are consumed.

In the language of plaintiff's complaint, "such United States residents or citizens, or some of them, have been deceived in Mexico by defendants' spurious 'Las Palmas' products and have carried such spurious products back into the United States for consumption, and there is a substantial likelihood that such purchasers, buying defendants' spurious products in Mexico, will be confused and misled into believing they are buying plaintiff's product; and plaintiff's good will in the United States is thereby placed in jeopardy of any inferiority or impurity in the defendants' spurious product."

Defendants' products are produced and canned in Mexico under comparatively unsanitary conditions, and are inferior in quality to plaintiff's products.

On or about August 30, 1955, defendant Las Palmas Food Company, Inc. sent letters by interstate and foreign mail from Los Angeles in this District, addressed to each of plaintiff's brokers and wholesalers in the United States and Mexico, declaring defendant corporation to be the exclusive owner in Mexico of the "Las Palmas" trade-mark and asserting that any exportation to Mexico of plaintiff's products bearing the trade-mark "Las Palmas" would be an infringement of defendants' trade-mark registered in Mexico.

This letter was false in at least two particulars: first, in the unqualified assertion that exportation of plaintiff's "Las Palmas" products to Mexico would be an infringement of defendants' mark in Mexico, since the trade-mark laws of Mexico recognize the rights of a prior user in Mexico and provide for the cancellation of a later user's trade-mark upon a prior user's application [Mexican Law of Industrial Property, Regulations and Tariff of Fees (published in Diario Oficial of December 31, 1942) Title III, Trademarks, Ch. I, Articles 99, 100, Ch. IX, Articles 200, 201, 208]; and second, in the assertion that defendant corporation, rather than defendant Gavaldon, was the owner of the "Las Palmas" trademark registration in Mexico.

As a result of this letter, plaintiff's reputation and good will has suffered among the wholesalers and brokers who formerly purchased plaintiff's products for shipment to and resale in Mexico, and purchases of plaintiff's products in the United States by these buyers have been drastically reduced.

Plaintiff has now filed a petition to cancel defendant Gavaldon's registration of the trade-mark "Las Palmas" under the laws of Mexico. However, such cancellation proceedings normally require at least one year before a final determination can be reached. As a result, plaintiff cannot obtain in Mexico timely relief against defendants, and is suffering and will continue to suffer irreparable injury until final determination of the cancellation proceedings in Mexico, unless defendants are restrained by this court.

Comprehensive statutory remedies are provided in the Lanham Act "for infringement of marks". See 15 U.S.C.A. § 1126(h); S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176, certiorari denied, 1949, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527. These statutory remedies include broad injunctive relief, as well as damages, for infringement and for unfair competition in the use of any registered mark. 15 U.S.C.A. §§ 1114, 1116–1119. These federal remedies are, by the terms of the statute [ibid.], limited to marks that are registered under the Act; and "mark" is defined as including, unless the contrary is plainly apparent from the context, "any trade-mark, service mark, collective mark, or certification mark entitled to registration * * *." Id. § 1127.

The Act also gives to "citizens or residents of the United States", id. § 1126 (i), owning "trade names or commercial names", id. §§ 1126(g), 1127, "whether or not they form parts of marks", id. §

1126(g), and whether such names be anywhere registered or unregistered, id. § 1126(a, g), a federal cause of action for unfair competition in the use of such names, with the same remedies as provided in the Act for infringement of registered marks, cf. Hodgson v. Fifth Ave. Plastics, D.C.S.D.N.Y.1950, 94 F.Supp. 160, "available so far as they may be appropriate in repressing acts of unfair competition" in the use of such names. 15 U.S.C.A. § 1126(h).

■ Accordingly it is held that the Lanham Act creates a federal cause of action for infringement of marks registered under the Act, S. C. Johnson & Son v. Johnson, supra, 175 F.2d at page 178, and for unfair competition in the use of registered marks and trade and commercial names as well. Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339; In re Lyndale Farm, 1951, 186 F.2d 723, 38 C.C.P.A., Patents, 825; Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962; Old Reading Brewery v. Lebanon Valley Brewing Co., D.C.M.D.Pa.1952, 102 F. Supp. 434, 437–438; see Time, Inc. v. T. I. M. E. Inc., D.C.S.D.Cal.1954, 123 F. Supp. 446.

Defendants contend, however, that their conduct of which plaintiff complains is not within the reach of the Lanham Act.

■ In the exercise of authority constitutionally delegated, the Congress wields the power of the nation as sovereign. Inherent in national sovereignty is the power to regulate the conduct of citizens or nationals abroad; a power which rests upon the allegiance owed to this country by every citizen and national. Blackmer v. United States, 1932, 284 U.S. 421, 436–437, 52 S.Ct. 252, 76 L.Ed. 375; Cook v. Tait, 1924, 265 U.S. 47, 44 S.Ct. 444, 68 L.Ed. 895; United States v. Bowman, 1922, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149; cf. Johnson v. Eisentrager, 1950, 339 U.S. 763, 769, 70 S.Ct. 936, 94 L.Ed. 1255.

■ Also inherent in national sovereignty is the power to impose, even upon foreigners owing no allegiance, liability for acts done abroad which proximately cause damage within the territorial limits of the sovereign. United States v. Sisal Sales Corp., 1927, 274 U.S. 268, 276, 47 S.Ct. 592, 71 L.Ed. 1042; Thomsen v. Cayser, 1917, 243 U.S. 66, 88, 37 S.Ct. 353, 61 L.Ed. 597; United States v. Aluminum Co. of America, 2 Cir., 1945, 148 F.2d 416.

So the problem at bar, as in Steele v. Bulova Watch Co., 1952, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252, is not one of finding requisite Congressional power to confer jurisdiction, but one of finding requisite Congressional intent. As Mr. Chief Justice Hughes put it in Blackmer v. United States, supra: "While the legislation of the Congress, unless the contrary intent appears, is construed to apply only within the territorial jurisdiction of the United States, the question of its application, so far as citizens of the United States in foreign countries are concerned, is one of construction, not of legislative power." 284 U.S. at page 437, 52 S.Ct. at page 254.

■ Inasmuch as "the general and almost universal rule is that the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done", all legislation is properly deemed " 'prima facie territorial.' " American Banana Co. v. United Fruit Co., 1909, 213 U.S. 347, 356–357, 29 S.Ct. 511, 512, 53 L.Ed. 826; and see Foley Bros. v. Filardo, 1949, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680; cf. Cuba R. R. Co. v. Crosby, 1912, 222 U.S. 473, 479, 32 S.Ct. 132, 56 L.Ed. 274; Slater v. Mexican National R. R. Co., 1904, 194 U.S. 120, 126, 24 S.Ct. 581, 48 L.Ed. 900.

■ It was the Congressional will to occupy the field with respect to claims arising from infringement of and unfair competition in the use of registered trade-marks and other marks defined in the Act, as well as trade names and commercial names, 15 U.S.C.A. §§ 1126(g, i), 1127, to the extent of Federal power under the Commerce Clause, U.S.Const. art. I, § 8, cl. 3, as plainly appears from the statutory declaration that:

"The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; * * * to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trade-marks, trade names, and unfair competition entered into between the United States and foreign nations." 15 U.S.C.A. § 1127; see Senate Rep. No. 1333, U.S.Code Cong.Serv. 79th Cong., 2d Sess. pp. 1274–1278 (1946); cf. United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 1929, 279 U.S. 156, 158, 49 S.Ct. 267, 73 L.Ed. 650; Dad's Root Beer Co. v. Doc's Beverages, 2 Cir., 1951, 193 F.2d 77, 81–82.

The Congressional intent was thus expressed to extend the Lanham Act to the limits of authority constitutionally delegated—to all "commerce within the control of Congress". 15 U.S.C.A. § 1127.

 "Commerce within the control of Congress" expressly includes all "Commerce with foreign Nations, and among the several States", U.S.Const. art. I, § 8, cl. 3, and may be said to exclude only such conduct as does not substantially affect interstate or foreign commerce. United States Printing & Lithograph Co. v. Griggs, Cooper & Co., supra, 279 U.S. at page 158, 49 S.Ct. 267; Warner v. Searle & Hereth Co., 1903, 191 U.S. 195, 206, 24 S.Ct. 79, 48 L.Ed. 145; In re Trade-Mark Cases, 1879, 100 U.S. 82, 96, 25 L.Ed. 550.

The Congress having elected to exercise the sovereign power of the nation in this field to the extent of authority delegated under the Constitution, and having chosen to effectuate this intent through jurisdiction conferred upon the federal courts, 15 U.S.C.A. § 1121, jurisdiction in the sense of power is here present. Steele v. Bulova Watch Co., supra, 344 U.S. at page 287, 73 S.Ct. 252; cf. The Fair v. Kohler Die & Specialty Co., 1913,

228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716; Fauntleroy v. Lum, 1908, 210 U.S. 230, 234–235, 28 S.Ct. 641, 52 L.Ed. 1039; The Resolute, 1897, 168 U.S. 437, 439, 18 S.Ct. 112, 42 L.Ed. 533.

In Steele v. Bulova Watch Co., supra, as Mr. Justice Clark points out, unfair trade practices were committed by an American citizen in Mexico; "trade practices which radiate unlawful consequences here". 344 U.S. at page 288, 73 S.Ct. at page 256. So in the case at bar.

The Court found federal jurisdiction of the subject matter in Steele, even though the acts done in the United States "when viewed in isolation do not violate any of our laws." 344 U.S. at page 287, 73 S.Ct. at page 256. By contrast, the acts of defendants at bar, in causing to be introduced into "commerce" within the United States counterfeits of plaintiff's registered mark on labels, procured by defendants to be printed within the United States and "intended to be used upon * * * goods", are acts which do violate our laws. 15 U.S.C.A. § 1114(1).

Section 1114 of Title 15 provides in part that "Any person who shall, in commerce * * * (b) reproduce, counterfeit, copy, or colorably imitate any * * * [registered] mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, * * * packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale in commerce of * * * goods * * * shall be liable to a civil action by the registrant for any or all of the remedies hereinafter provided * * * except that * * * the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive purchasers." 15 U.S.C.A. § 1114(1) (b).

Thus the case at bar has a jurisdictional base equal to Steele and more; for here there are not only unfair trade practices committed by an American citizen in Mexico "which radiate unlawful consequences here," but also acts committed

in the United States which clearly violate the Lanham Act.

Defendants urge, nevertheless, that even though this court may have the power to grant the relief plaintiff prays, the court should abstain from exercising that power because to do so would offend the sovereignty of the Republic of Mexico. This is so, defendants contend, because the registration by defendants in Mexico of their counterfeited copy of plaintiff's trade-mark is presumably valid under Mexican law until cancelled.

This argument raises questions of policy or comity; considerations that rule whether jurisdictional power, conceded to exist, should be exercised in a given case. This problem was not before the Supreme Court in Steele, since by the time the case was reached Mexico had nullified Steele's spurious Mexican registration of the long-standing Bulova mark.

But the problem was before the Court of Appeals, for the Fifth Circuit when the Steele case was decided there, and Judge Rives' well reasoned opinion could well serve as a complete answer to the questions raised here. Bulova Watch Co. v. Steele, 5 Cir., 1952, 194 F.2d 567.

Although plaintiff at bar has filed proceedings in Mexico to cancel or nullify the registration by defendants of plaintiff's mark there, it is conceded that one year or more must pass before plaintiff can expect a final determination of this application.

Meantime, as defendants point out, this court must assume the registration of plaintiff's mark by defendants in Mexico to be valid there. So to assume does not necessarily mean however that exercise of this court's jurisdiction to grant the relief plaintiff seeks "would impugn foreign law" or be an "interference with the sovereignty of another nation". 344 U.S. at page 289, 73 S.Ct. at page 257.

For at the most defendants' Mexican registration of plaintiff's mark can have no greater effect than to confer upon defendants a license or permission to use the mark in Mexico. It is not even con-tended that any public policy of Mexico requires defendants ever to exercise that license.

So there could be no affront to Mexican sovereignty or Mexican law if, as between the parties, this court should declare that defendants may not so use their license under Mexican law as to injure plaintiff's foreign commerce conducted from the United States. United States v. Sisal Sales Co., supra, 274 U.S. at page 276, 47 S.Ct. 592; Restatement, Conflict of Laws §§ 377, 80, 63.

It should perhaps be emphasized that plaintiff does not seek a determination that any act of a foreign sovereign is invalid. Cf. American Banana Co. v. United Fruit Co., supra, 213 U.S. at page 358, 29 S.Ct. 511; Bernstein v. Van Heyghen, 2 Cir., 163 F.2d 246, 249, certiorari denied, 1947, 332 U.S. 772, 68 S.Ct. 88, 92 L.Ed. 357; Banco de Espana v. Federal Reserve Bank, 2 Cir., 1940, 114 F.2d 438, 443. Nor does plaintiff ask this court to negate something that has already been determined in adversary proceedings between the parties at bar in a foreign forum. Cf. Vanity Fair Mills v. T. Eaton Co., 2 Cir., 234 F.2d 633, 646–647, certiorari denied, 1956, 77 S.Ct. 96; Geo. W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536, 540, certiorari denied, 1944, 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606. Thus comity does not here argue against exercise of the power which the Congress has conferred.

Neither does policy dictate that this court should disavow or decline jurisdiction in favor of another forum. Indeed, the Senate Committee reporting upon the Lanham Act declared that "when it is considered that the protection of trade-marks is merely protection to goodwill, to prevent diversion of trade through misrepresentation, and the protection of the public against deception, a sound public policy requires that trade-marks should receive nationally the greatest protection that can be given them." U.S.Code Cong.Serv. 79 Cong., 2d Sess. p. 1277 (1946).

And to effectuate this "sound public policy", despite possible injury to the

commerce of a foreign country, the Act even provides that: "No article of imported merchandise which shall copy or simulate the name of * * * any domestic * * * manufacturer, or trader, * * * or which shall copy or simulate a trade-mark registered in accordance with the provisions of this chapter * * * shall be admitted to entry at any customhouse of the United States * * *." 15 U.S.C.A. § 1124.

It is borne in mind that although the Lanham Act gives a federal cause of action for infringement of and for unfair competition in the use of registered "marks", 15 U.S.C.A. §§ 1126(h), 1114–1120, and provides like remedies for unfair competition in the use of "trade names" or "commercial names", id. § 1127, "whether or not they form parts of marks", id. § 1126(g), and regardless of whether such names be anywhere registered, id. § 1126(a, g), no federal cause of action is given by the Act for unfair competition generally. L'Aiglon Apparel, Inc., v. Lana Lobell, Inc., 3 Cir., 1954, 214 F.2d 649; American Auto Ass'n v. Spiegel, 2 Cir., 1952, 205 F.2d 771; cf. Pagliero v. Wallace China Co., supra, 198 F.2d 339; Stauffer v. Exley, supra, 184 F.2d 962; see: Panaview Door & Window Co. v. Van Ness, D.C.S. D.Cal.1954, 124 F.Supp. 329; Haeger Potteries v. Gilner, D.C.S.D.Cal.1954, 123 F.Supp. 261.

Hence it is that, for jurisdiction over the alleged acts of unfair competition not involving the use in "commerce" of the registered trade-mark or the trade name, resort must be had to the pendent-jurisdiction statute which plaintiff here invokes.

The pendent-jurisdiction statute, 28 U.S.C. § 1338(b), necessarily presupposes a claim of unfair competition arising otherwise than "under the copyright, patent or trade-mark laws" since, unless so interpreted, § 1338(b) would confer no jurisdiction additional to that already conferred by § 1338(a) and so would be mere surplusage. See: L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., supra, 214 F.2d at page 649; Armstrong

Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 324–325, 59 S.Ct. 191, 83 L.Ed. 195; Hurn v. Oursler, supra, 289 U.S. at pages 240–243, 248, 53 S.Ct. 586; Stark Bros. Nurseries & Orchards Co. v. Stark, 1921, 255 U.S. 50, 41 S.Ct. 221, 65 L.Ed. 496; Musher Foundation v. Alba Trading Co., 2 Cir., 127 F.2d 9, certiorari denied, 1942, 317 U.S. 641, 63 S.Ct. 33, 87 L.Ed. 517; Pure Oil Co. v. Puritan Oil Co., 2 Cir., 1942, 127 F.2d 6; Bulova Watch Co. v. Stolzberg, D.C.Mass.1947, 69 F.Supp. 543; Reviser's Note to § 1338(b), 28 U.S.C.A.

In a case where diversity of citizenship exists, pendent jurisdiction under 28 U.S.C. § 1338(b) adds nothing to, and fully coincides with diversity jurisdiction under 28 U.S.C. § 1332, but for the jurisdictional-amount requirement of § 1332 which is entirely absent from both § 1338(b) and the Lanham Act. 15 U.S. C.A. § 1121; see: Fashion Originators' Guild v. Federal Trade Commission, 1941, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949; Cities Service Oil Co. v. Dunlap, 1939, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Ruhlin v. N. Y. Life Ins. Co., 1938, 304 U.S. 202, 205, 58 S.Ct. 860, 82 L.Ed. 1290; Rice & Adams Corp. v. Lathrop, 1929, 278 U.S. 509, 515, 49 S.Ct. 220, 73 L.Ed. 480; Bell v. Hood, D.C.S.D.Cal. 1947, 71 F.Supp. 813, 817–821.

Pendent jurisdiction under § 1338(b) is properly invoked therefore whenever necessary to sustain federal jurisdiction of a cause of action for unfair competition arising under state law, here the law of California. [See Developments in the Law—Trade-Marks and Unfair Competition, 68 Harv.L.Rev. 814, 884–85 (1955).]

It follows then that the equity jurisdiction of this court is properly invoked in the case at bar under the Lanham Act and 28 U.S.C. § 1338(b). Cf. Briggs v. United Shoe Machinery Co., 1915, 238 U.S. 48, 50, 36 S.Ct. 6, 60 L.Ed. 138.

Equity jurisdiction as conferred by the Constitution on the federal courts imposes the duty to adjudicate in keep-

ing with the equitable rules and principles recognized by the Court of Chancery in England at the time our Constitution was formed. Atlas Life Ins. Co. v. W. I. Southern, Inc., 1939, 306 U.S. 563, 568, 59 S.Ct. 657, 83 L.Ed. 987.

Always to be heeded is the admonition of Giles v. Harris, 1903, 189 U.S. 475, 23 S.Ct. 639, 47 L.Ed. 909 that: "In determining whether a court of equity can take jurisdiction, one of the first questions is what it can do to enforce any order that it may make." 189 U.S. at page 487, 23 S.Ct. at page 642.

■ To borrow the words of Mr. Justice Clark in Steele v. Bulova Watch Co., supra, 344 U.S. at page 289, 73 S.Ct. at page 257: "Where, as here, there can be no interference with the sovereignty of another nation, the District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction." State of New Jersey v. New York, 1931, 283 U.S. 473, 474, 51 S. Ct. 519, 75 L.Ed. 1176; Massie v. Watts, 1810, 6 Cranch 148, 3 L.Ed. 181; The Salton Sea Cases, 9 Cir., 1909, 172 F. 792; cf. United States v. National Lead Co., 1947, 332 U.S. 319, 351–352, 363, 67 S.Ct. 1634, 91 L.Ed. 2077.

As explained in Phelps v. McDonald, 1878, 99 U.S. 298, 25 L.Ed. 473: "Where the necessary parties are before a court of equity, it is immaterial that the *res* of the controversy, whether it be real or personal property, is beyond the territorial jurisdiction of the tribunal. It has the power to compel the defendant to do all things necessary, according to the *lex loci rei sitae,* which he could do voluntarily, to give full effect to the decree against him * * *. Without regard to the situation of the subject-matter, such courts consider the equities between the parties, and decree *in personam* according to those equities, and enforce obedience to their decrees by process *in personam*." 99 U.S. at page 308.

Turning now to the equities. Here defendants are not merely using plaintiff's mark, but are using it as a part of a counterfeit of plaintiff's label placed on the same size cans as used by plaintiff.

■ Unfair competition in the use of a registered mark or a trade name in "commerce" under the Act consists in any use intended or likely "to cause confusion or mistake or to deceive purchasers as to the source of origin of * * * goods or services * * *." 15 U.S.C.A. § 1114(1) (a). This in essence is the common-law concept of unfair competition as applied to the use of trade-marks and trade names. Cf. American Steel Foundries v. Robertson, 1926, 269 U.S. 372, 380–384, 46 S.Ct. 160, 70 L.Ed. 317; Hanover Star Milling Co. v. Metcalf, 1916, 240 U.S. 403, 412–413, 36 S.Ct. 357, 60 L.Ed. 713; Elgin National Watch Co. v. Illinois Watch Case Co., 1901, 179 U.S. 665, 673–674, 21 S.Ct. 270, 45 L.Ed. 365; 3 Restatement, Torts §§ 708–756 (1938).

Since the profit motive prompts competition which the policy of the law encourages to sustain our system of free enterprise, there is rational basis for holding that the newcomer, by copying the first comer's product, admits it to be more readily marketable. Straus v. Notaseme Co., 1916, 240 U.S. 179, 181, 36 S.Ct. 288, 60 L.Ed. 590. And in the absence of evidence to the contrary, there is rational basis for the added inference that the latter can more readily market copies of the former's product because the consuming public is confused into believing that the copies are the first comer's product. National Van Lines v. Dean, 9 Cir., 1956, 237 F.2d 688; American Chicle Co. v. Topps Chewing Gum, 2 Cir., 1953, 208 F.2d 560, 563; 3 Restatement, Torts § 708, comments c and d; id. § 729, comment f (1938); cf. United States v. Ross, 1875, 92 U.S. 281, 283–284, 23 L.Ed. 707; Hunter v. Shell Oil Co., 5 Cir., 1952, 198 F.2d 485, 490; E. K. Wood Lumber Co. v. Anderson, 9 Cir., 81 F.2d 161, 166, certiorari denied, 1936, 297 U.S. 723, 56 S.Ct. 669, 80 L.Ed. 1007; 1 Wigmore, Evidence §§ 26, 41 (3d ed. 1940).

By a confusion of source and origin, a bald attempt is here made to secure for defendants' goods some of the good will,

advertising and sales stimulation built by plaintiff.

Copying of the trade-mark and trade name, in addition to the label of another, as defendants are doing in precise detail as to design, shape and color, is difficult to justify in any case. And where as here myriad variations are available to the misappropriator, the case is mildly put by saying his very act of copying strongly impels the inference that he intends to reap commercial gain by trading on the good will of the first comer. National Lead Co. v. Wolfe, 9 Cir., 223 F.2d 195, 202, certiorari denied, 1955, 350 U.S. 883, 76 S.Ct. 135; American Chicle Co. v. Topps Chewing Gum, supra, 208 F.2d at pages 562–563; 3 Restatement, Torts § 729(b), comment f (1938); 67 Harv.L.Rev. 1090 (1954).

The tendency of the law is "in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade." Ross-Whitney Corp. v. Smith Kline & French Lab., 9 Cir., 1953, 207 F.2d 190, 196, note 17; Q-Tips, Inc. v. Johnson & Johnson, 3 Cir., 1953, 206 F.2d 144, 145; 3 Restatement, Torts § 540 (1938).

Our moral standards are well sustained and the public interest in free competition is advanced, where a court of equity forbids the immoral act of misappropriation by exact copying of the goods or services of another. Cf. International News Service v. Associated Press, 1918, 248 U.S. 215, 236, 239–240, 246–248, 258–262, 39 S.Ct. 68, 63 L.Ed. 211; Briddell v. Alglobe Trading Corp., 2 Cir., 1952, 194 F.2d 416, 421–422 (Judge Clark dissenting).

The "slavish" copying of features not necessary to be reproduced in order to produce an article in commercial competition is a sheer piracy which is clearly without moral justification, is parasitic in nature, does nothing to advance any system of free enterprise, and should be held an unfair trade practice without legal justification. See 3 Restatement, Torts, Confusion of Source, Introductory Note, pp. 537–540; id. § 711; id. Imitation of Appearance, Introductory

Note, p. 622; id. § 729, comment f; id. § 641, comment j (1938); cf. Electric Auto-Lite Co. v. P & D Mfg. Co., 2 Cir., 1940, 109 F.2d 566; Cheney Bros. v. Doris Silk Corp., 2 Cir., 1929, 35 F.2d 279, certiorari denied, 1930, 281 U.S. 728, 50 S.Ct. 245, 74 L.Ed. 1145.

The trade-mark and name here, in the words of Mr. Justice Holmes, "stakes the reputation of the plaintiff upon the character of the goods. * * * It deals with a delicate matter that may be of great value but that easily is destroyed, and therefore should be protected with corresponding care." Bourjois & Co. v. Katzel, 1923, 260 U.S. 689, 692, 43 S.Ct. 244, 245, 67 L.Ed. 464.

Section 14400 of the Business and Professions Code of California provides with respect to ownership of a trade name, as does § 14270 with respect to ownership of a trade-mark, that: "Any person who has first adopted and used a trade name, whether within or beyond the limits of this State, is its original owner." See Stork Restaurant v. Sahati, 9 Cir., 1948, 166 F.2d 348, 352–353; cf. Pagliero v. Wallace China Co., supra, 198 F.2d at pages 341, 344; Stauffer v. Exley, supra, 184 F.2d at page 963.

Section 3369 of the Civil Code of California provides in part that: "Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction. * * * As used in this section, unfair competition shall mean and include unfair or fraudulent business practice and unfair, untrue or misleading advertising * *."

Use of the phrase "shall mean and include" indicates that the statutory definition was not intended to be restrictive or exclusive. Athens Lodge No. 70 v. Wilson, 1953, 117 Cal. App.2d 322, 255 P.2d 482. It is left to the courts to determine what conduct amounts to unfair competition in a particular case; the test question always is whether the public is likely to be deceived. Schwartz v. Slenderella Systems of California, 1954, 43 Cal.2d 107, 271 P.2d 857; American Philatelic Society

v. Claibourne, 1935, 3 Cal.2d 689, 697–698, 46 P.2d 135; MacSweeney Enterprises, Inc. v. Tarantino, 1951, 106 Cal.App.2d 504, 235 P.2d 266, and see Netterville, California Law of Unfair Competition: Unprivileged Imitation, 28 So. Cal.L.Rev. 240 (1955).

■ Wholly apart from any unfair use of a trade-mark or trade name, the copying or simulation of an article such as plaintiff's label here, where the effect thereof is to appropriate another's trade, will be enjoined by the California courts. So with the sending of unfair communications to the trade. Banzhaf v. Chase, 1907, 150 Cal. 180, 183, 88 P. 704; Weinstock, Lubin & Co. v. Marks, 1895, 109 Cal. 529, 539–540, 42 P. 142, 145–146, 30 L.R.A. 182; McCord Co. v. Plotnick, 1951, 108 Cal.App.2d 392, 239 P.2d 32; Grant v. California Bench Co., 1949, 76 Cal.App.2d 706, 708, 173 P.2d 817, 818.

Hence it is unnecessary now to specify precisely where coverage of the Lanham Act ends and that of California law begins with respect to plaintiff's label in the case at bar. It suffices that together the Lanham Act and the law of California operate to proscribe all the acts of unfair competition of which plaintiff complains.

For the reasons stated, defendants' alternative motions to dismiss must be denied.

To the extent not conceded, the facts in the case at bar are established interlocutorily upon the record, substantially as alleged in the amended complaint. City of Hammond v. Schappi Bus Line, 1927, 275 U.S. 164, 172, 48 S.Ct. 66, 72 L.Ed. 218.

Accordingly plaintiff's motion for a preliminary injunction will be granted to the extent that, upon the filing by plaintiff with the Clerk of a bond or undertaking in the penal sum of $10,000, with good and sufficient surety approved as provided by local rule 8, and conditioned as required by Rule 65 of the Federal Rules of Civil Procedure, a writ of injunction shall issue, in the form and scope provided by Rule 65, enjoining and restraining the defendants and all persons referred to in Rule 65(c), pending the hearing and determination of this action or until further order of court, as follows:

(1) From using or employing, directly or indirectly in any way or manner, the trade-mark "Las Palmas", or any colorable imitation thereof, on or in connection with any sale, distribution, promotion, advertising for sale, or display, in either the United States or the Republic of Mexico, of any red chili sauce, or of any other Spanish-type foods or condiments which are like or closely related to any now manufactured or offered for sale by plaintiff;

(2) From aiding or participating, directly or indirectly in any way or manner, in any sale, distribution, promotion, advertising for sale, or display, in either the United States or the Republic of Mexico, of any red chili sauce, or of any other Spanish-type foods or condiments like or closely related to any now manufactured or offered for sale by plaintiff, labeled with the trade-mark "Las Palmas", or any colorable imitation thereof, or with any other mark or label confusingly similar to plaintiff's label;

(3) From representing, either orally or in writing, to any other person not a party to this suit, that the exportation to the Republic of Mexico, or the sale or distribution therein, of "Las Palmas" brand products manufactured or sold by plaintiff constitutes an infringement or other violation of any rights of defendants, or any of them; and

(4) From impeding or interfering with, directly or indirectly in any way or manner, plaintiff's endeavors to gather evidence or testimony from plaintiff's wholesalers or distributors in the Republic of Mexico and, in particular, from urging or inducing, or in any way or manner attempting to induce, any of plaintiff's wholesalers or distributors to refuse to supply affidavits or testimony respecting plaintiff's use of the "Las Palmas" trade-mark in the Republic of Mexico.

In order further to preserve pendente lite the *status quo ante,* defendants will be further restrained, pending the hearing and determination of this cause or until further order of court, from in any way or manner transferring or encumbering any right, title or interest in the Mexican trade-mark registration in question or any good will associated therewith in the Republic of Mexico, or the assets of that portion of the business of defendants, or any of them, in which is employed the trade-mark "Las Palmas" of Mexican registration, including specifically unused labels, signs, prints, packages, wrappers, receptacles, and advertisements, bearing the trade-mark "Las Palmas" thereon. Cf. United States v. United Mine Workers, 1947, 330 U.S. 258, 289–294, 67 S.Ct. 677, 91 L.Ed. 884; United States v. Shipp, 1906, 203 U.S. 563, 573, 27 S.Ct. 165, 51 L.Ed. 319.