**FRANKLIN MINT CORPORATION (by change of name from the Franklin Mint, Inc.)**

v.

**FRANKLIN MINT, LTD.**

Civ. A. No. 71–329.

United States District Court, E. D. Pennsylvania.

April 17, 1973.

Arthur H. Seidel, Philadelphia, Pa., for plaintiff.

Samuel P. Lavine, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, DISCUSSIONS AND CONCLUSIONS OF LAW

GORBEY, District Judge.

This action arises from a motion by the plaintiff, Franklin Mint Corporation, to hold defendant, Franklin Mint, Ltd., in contempt for violation of an injunction which was entered in this cause on March 11, 1971, as modified by final decree and order of July 6, 1971, and made permanent and perpetual by order of July 9, 1971.

The facts giving rise to the instant action grow out of an advertisement which the defendant ran in the October 1, 1972 issue of the British newspaper, *The Sunday Times*. It is this advertisement which the plaintiff contends is a violation of the aforementioned injunction entered by this court. Affidavits were submitted and a hearing was held on the motion on December 4, 1972, after which briefs were submitted by the parties.

## FINDINGS OF FACT

1. The Franklin Mint Corporation [1] filed a suit on February 10, 1971, charging the defendant, Franklin Mint, Ltd., with trademark infringement and unfair competition.

2. This court preliminarily enjoined defendant, Franklin Mint, Ltd., on March 11, 1971. The preliminary injunction was modified by the consent of the parties on July 6, 1971, and made permanent and perpetual by order of this court on July 9, 1971. The terms of said injunction (*see* Franklin Mint, Inc. v. Franklin Mint, Ltd., 331 F.Supp. 827, 832 (E.D.Pa.1971) ) are incorporated herein by reference.

3. Copies of: 1. the plaintiff's motion to hold defendant in contempt of court and the appointment of a master; 2. memorandum in support of plaintiff's motion to hold defendant in contempt and the appointment of a master; and 3. affidavits of Richard J. Kradjel, Howard R. Batton and Samuel J. Elster were served on the defendant on October 27, 1972, at defendant's registered office at 92 Oldfields Road, Sutton, Surrey, England (affidavit of Howard F. Cooper).

4. Notice of the December 4, 1972 hearing was served on defendant on November 20, 1972, by personal service at the registered office of defendant at 92 Oldfields Road, Surrey, England (affidavit of Pamela Elizabeth Walker).

5. Defendant, Franklin Mint, Ltd., ran an advertisement in the October 1, 1972 issue of the British newspaper, *The Sunday Times* (plaintiff's exhibit 1; Kradjel affidavit, paragraphs 3 and 6).

6. The advertisement offers a set of coins entitled "The Royal Silver Wedding Coins" and features defendant's tradename, "Franklin Mint, Ltd.". Additionally, the advertisement describes this particular issue of coins as a

---

1. The Franklin Mint, Inc. duly changed its corporate name to Franklin Mint Corporation on March 29, 1972.

"world-wide heirloom edition", and states in bold-faced letters, "this unique issue is world-wide" (plaintiff's exhibit 1).

7. The October 1, 1972 edition of *The Sunday Times* was available at the New York offices of The Times Newspapers of Great Britain, Inc. (Batton affidavit, paragraphs 3 and 4).

8. Copies of the British newspaper, *The Sunday Times*, are sold at the corner of 13th and Market Streets, in Philadelphia, Pennsylvania. Fifty-five copies of *The Sunday Times* and 6 copies of the daily newspaper are available at that location (n. t. p. 16).

9. Approximately 4,320 copies of *The Sunday Times* are delivered each week in the United States, of which 1,850 are on subscription and 2,470 at newsstands. These figures were true for the October 1, 1972 issue of *The Sunday Times* (n. t. p. 19). Of the newspapers which are available at newsstands, at least 50% of said issues are sold (n. t. p. 20).

## DISCUSSION

### 1. JURISDICTION

■ This court in its findings of facts, discussions and conclusions of law, issued March 11, 1971, determined that this court had jurisdiction in the matter before the court. These findings and conclusions are not now open for dispute. Alemite Manufacturing Corp. v. Staff, 42 F.2d 832 (2d Cir. 1930). The order of July 9, 1971, making the injunction against defendant Franklin Mint, Ltd. permanent and perpetual conferred continuing jurisdiction over the defendant and upon this court.

### 2. CIVIL CONTEMPT

■ The issue before this court is whether or not the defendant has violated the injunction previously issued by this court and, if so, whether or not it should be held in civil contempt.

"Civil contempt of course is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. In re Rubin, 378 F.2d 104 (C.A. 3, 1967)."

Lichtenstein v. Lichtenstein, 425 F.2d 1111 (3d Cir. 1970)

In civil contempt, willfulness is not in issue. As the Supreme Court said in McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599:

"The absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. [Citing cases] Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act . . . An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently."

■ The defendant in his post-hearing memorandum contends that this court's order of July 9, 1971 was but a confirmation by the court of a settlement agreement since it was entered by the consent of the parties and as such it is contractual and not a legal determination by the court. This contention is rejected. As the court said in United States v. Schine, 260 F.2d 552, 557 (2d Cir. 1958):

" 'An order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.' United States v. United Mine Workers of America, 330 U.S. 258, 293, 67 S.Ct. 677, 696, 91 L. Ed. 884."

The order referred to in *Schine, supra,* was a consent decree also. Additionally, as stated before, this court made its findings of fact and conclusions of law and issued a preliminary injunction on March 11, 1971. On July 6, 1971, the preliminary injunction was modified by the consent of the parties and on July 9,

1971, the preliminary injunction entered on March 11, as modified by the final decree and order agreed to on July 6, was made permanent and perpetual. Comparing the March 11 and July 6 orders, it is clear that the only difference between the two is the fact that the July 6 order, by consent, limited the injunction to application in the United States, its territories, possessions and Puerto Rico. The two orders are identical in all other respects. Therefore when the court entered the July 9 order, it was making permanent and perpetual the preliminary injunction which it had entered on March 11, 1971, with the exception that the court approved the agreement of the parties as to the territorial limitations of the July 6 agreement.

The final order and decree issued July 6, 1971 prohibits the defendant from: ". . . doing, aiding, causing or abetting . . . [the prohibited acts] . . . insofar as the same affects commerce which may be lawfully regulated by Congress [2]." The occurrences which gave rise to this contempt proceeding are set forth in the findings of fact above and are undisputed. There is no need to go in to any of the legal findings made pursuant to the court's findings of fact and conclusions of law on March 11, 1972. Such matters are not now before this court. As the court in Alemite Manufacturing Corp. v. Staff, *supra*, 42 F.2d, went on to say at page 833:

"Upon proceedings to punish for contempt, the propriety of the decree is not open . . . The respondent may only deny any knowledge of the decree, or that his act was within it."

The only question now is whether or not defendant's acts fall within the prohibition of the injunction.

"[A] person will not be held in contempt of an order unless the order has given him fair warning that his acts were forbidden. In a recent case this

2. Included in the prohibited acts are:
"1. Directly or indirectly infringing, or contributorily infringing in the United States, its territories, possessions and Puerto Rico, upon plaintiff's trademark and/or trade name THE FRANKLIN MINT.

2. Directly or indirectly using in the United States, its territories, possessions and Puerto Rico, plaintiff's trademark and/or trade name THE FRANKLIN MINT in connection with coins, tokens, medals, medallions, fine art products, and precious metal ingots, similar or related goods, or from using any words or letters which in any way simulate the trademark and/or trade name THE FRANKLIN MINT or any other letters or designs which in any way simulate plaintiff's trademark and/or trade name THE FRANKLIN MINT.

3. Engaging in the United States, its territories, possessions and Puerto Rico in any acts or activities directly or indirectly calculated to trade upon the name, reputation or goodwill of plaintiff or in any manner to palm-off defendant's goods as those of plaintiff's.

4. Importing into the United States and/or using in the United States, its territories, possessions and Puerto Rico in the manufacture, sale, offering for sale, promoting, advertising, marketing and distributing of coins, tokens, medals, medallions, fine art products, and precious metal ingots, similar or related goods, or on any packages, cartons, labels, display cards, wrappers or any advertising matter whatsoever, the trademark and/or trade name THE FRANKLIN MINT in such manner as to feature said trademark and/or trade name or to deceive or tend to deceive the purchasing public into the belief that the goods manufactured and sold by the defendant are the goods manufactured and/or sold by the plaintiff.

5. Importing into the United States and/or using in the United States, its territories, possessions and Puerto Rico in the manufacture, sale, offering for sale, promoting, advertising, marketing and distributing of coins, tokens, medals, medallions, fine art products, and precious metal ingots, similar or related goods, or on any packages, cartons, labels, display cards, wrappers or any advertising matter whatsoever, the trademark and/or trade name THE FRANKLIN MINT in such manner as to deceive or tend to deceive or to falsely designate the origin or to falsely describe or represent a source of the goods or otherwise to create confusion among the purchasing public as to the source of origin of defendant's goods."

court stated: 'The longstanding, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt.' Ford v. Kammerer, 450 F.2d 279, 280 (3d Cir. 1971); *accord* Lichtenstein v. Lichtenstein, 425 F.2d 1111 (3d Cir. 1970); In re Rubin, 378 F.2d 104 (3d Cir. 1967)."

United States v. Christie Industries, Inc., 465 F.2d 1002 at 1006 (3d Cir. 1972).

The undisputed facts discussed above indicate that the defendant placed the advertisement in *The Sunday Times*. The advertisement represented that "The Royal Silver Wedding Coins" were available as a "world-wide heirloom edition". Copies of *The Sunday Times* reached commerce lawfully regulated by Congress, copies of which were available at a newsstand at 13th and Market Streets, in Philadelphia, Pennsylvania. There is no evidence on the record that defendant ever received or accepted any orders or sales as a result of the advertisement. However, there were no words of limitation contained in the advertisement suggesting either that the Franklin Mint, Ltd. was not associated with the Franklin Mint Corporation or that the edition was not available in the United States. A reading of the terms of the injunction, set out in footnote 2, clearly shows what acts were forbidden. The defendant is the party enjoined by the order, and the order gives him fair notice of what acts are prohibited. Under the circumstances the defendant's conduct falls within the prohibition of the injunction, therefore rendering the defendant liable for contempt.

## 3. POWER OF THE COURT

The fact that the advertisement in question was placed in a British newspaper does not hinder this court's power to impose liability for violation of the injunction. In United States v. Aluminum Co. of America et al., 148 F.2d 416, 443 (2d Cir. 1945), the court stated:

". . . It is settled law . . . that any state may impose liabilities, even upon persons not within its allegiance, for conduct outside its borders that has consequences within its borders which the state reprehends; and these liabilities other states will ordinarily recognize. Strassheim v. Daily, 221 U.S. 280, 284, 285, 31 S.Ct. 558, 55 L.Ed. 735; Lamar v. United States, 240 U.S. 60, 65, 66, 36 S.Ct. 255, 60 L.Ed. 526; Ford v. United States, 273 U.S. 593, 620, 621, 47 S.Ct. 531, 71 L.Ed. 793; Restatement of Conflicts of Laws, § 65."

To impose liability for such an act is not to legislate in a foreign country. As the court said in Ramirez and Feraud Chili Co. v. Las Palmas Food Co., 146 F.Supp. 594, 600 (S.D.Cal.1956), aff'd, 245 F.2d 875 (9 Cir.), cert. denied, 355 U.S. 927, 78 S.Ct. 384, 2 L.Ed.2d 357 (1958):

"In the exercise of authority constitutionally delegated, the Congress wields the power of the nation as a sovereign

. . .

". . . inherent in national sovereignty is the power to impose, even upon foreigners owing no allegiance, liability for acts done abroad which proximately cause damage within the territorial limits of the sovereign. United States v. Sisal Sales Corp., 1927, 274 U.S. 268, 276, 47 S.Ct. 592, 71 L.Ed. 1042; Thomsen v. Cayser, 1917, 243 U.S. 66, 88, 37 S.Ct. 353, 61 L.Ed. 597; United States v. Aluminum Co. of America, 2 Cir. 1945, 148 F.2d 416."

Therefore in light of the above this court has the power to hold defendant liable for contempt.

## 4. DAMAGES

This court's findings of fact, discussions and conclusions of law issued on March 11, 1971, found the likelihood of irreparable injury to plaintiff if an injunction did not issue. That same likelihood continues whenever defendant continues a course of conduct prohibited by the injunction.

As the Court said in *Ramirez, supra*, at 605:

> "The trademark and name here, in the words of Mr. Justice Holmes, 'stakes the reputation of the plaintiff upon the character of the goods. \* \* \* It deals with a delicate matter that may be of great value but that easily is destroyed, and therefore should be protected with corresponding care.' Bourjois and Co. v. Katzel, 1923, 260 U.S. 689, 692, 43 S.Ct. 244, 245, 67 L. Ed. 464."

Although there is no evidence that defendant ever received or accepted any sales as the result of the advertisement, we cannot anticipate the results if such advertisements continued. Because of the disparity in quality previously found between plaintiff's and defendant's products, the existence of an advertisement depicting poor quality coins under a confusingly similar trade name, Franklin Mint, Ltd., necessarily damages the goodwill associated with the plaintiff's registered trademark.

## 5. RELIEF

While this court will not, at this time, go so far as to attempt to regulate the media in which defendant may advertise, defendant must, however, take adequate steps to fully insure that there will be no likelihood of confusion or damage to plaintiff's reputation and goodwill in any advertisement which has any potential of reaching commerce lawfully regulated by Congress.

> "We are dealing here with the power of a court to grant the relief that is necessary to effect compliance with its decree. The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. They may entail the doing of a · variety of acts . . ."

McComb v. Jacksonville Paper Co., *supra*, 336 U.S. at 193, 69 S.Ct. at 500.

In order to give the plaintiff the full remedial relief to which it is entitled and to be fair to the defendant, the defendant must take the following steps as to its advertising. Whenever defendant places an advertisement in any media which has any potential of reaching commerce lawfully regulated by Congress, the defendant must take the following precautions:

1.  Disclaim any association, affiliation, or any other relationship with the plaintiff;

2.  Make it clear in the advertisement that defendant's products are not available to purchasers in the United States, its territories, possessions and Puerto Rico;

3.  Take any other steps necessary to comply with the decree previously issued in this case.

In addition, defendant is to pay to plaintiff reasonable attorney's fees and court costs incurred in bringing this instant motion.

## CONCLUSIONS OF LAW

1.  This court retains jurisdiction over this action by its order of July 9, 1971.

2.  Copies of *The Sunday Times* of October 1, 1972, containing defendant's advertisement reached commerce lawfully regulated by Congress.

3.  The preliminary injunction of March 11, 1971, as modified by the consent of the parties on July 6, 1971, was made permanent and perpetual by order of July 9, 1971. Said order is in full force and effect ·as of the date of this action.

4.  The testimony adduced at a hearing on this motion together with affidavits filed by the plaintiff show conduct on the part of the defendant which is in violation of the injunction heretofore issued.

5.  Defendant is held in contempt of the order of court dated July 9, 1971.