# UNITED STATES v. SISAL SALES CORPORATION
## ET AL.

### APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 200. Argued March 9, 1927.—Decided May 16, 1927.

1. A combination, entered into by parties within the United States and made effective by acts done therein, to monopolize the supply abroad, and the domestic stock, of an article of commerce produced only in a foreign country, monopolize and control its importation and sales, destroy competition, and arbitrarily advance and fix prices and make other unreasonable exactions of purchasers, is in violation of the Sherman Anti-Trust Act and of § 73 of the Wilson Tariff Act, as amended February 12, 1913. P. 274.

2. The fact that their control of the production was aided by discriminatory legislation of the foreign country does not prevent punishment of the forbidden results of the conspiracy, within the United States. *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347, distinguished. P. 275.

Reversed.

APPEAL from a decree of the District Court dismissing, on motion equivalent to a demurrer, a bill by the United States to enjoin an alleged combination and conspiracy to monopolize the importation and sale in the United States of sisal—a fiber which is used for the manufacture of binder twine and which is produced in Yucatan almost exclusively

*Assistant to the Attorney General Donovan,* with whom *Solicitor General Mitchell,* and *Messrs. Rush H. Williamson, Miller Hughes,* and *William D. Whitney,* Special Assistants to the Attorney General, were on the brief, for the United States.

The entry into a conspiracy with unlawful intent to restrain foreign trade and commerce is an offense under

the Sherman Anti-Trust Law and the anti-trust provisions of the Wilson Tariff Law. The unlawful character of such a conspiracy is not dependent upon the unlawfulness of any one or more of the particular acts relied upon by the defendants to make such conspiracy effective. The offense is complete when the conspiracy is entered into. *Nash* v. *United States,* 229 U. S. 373. The *American Banana Case,* 213 U. S. 359, was an action for damages under § 7 of the Sherman Act, and the injury relied upon was committed at the instigation of the defendant by the Government of Costa Rica. The right to damages must depend upon the unlawful character of the injury. When a conspiracy is one to restrain foreign commerce and to monopolize the importation of a particular product, it is unlawful irrespective of the means employed to carry it out, and is subject to be enjoined under § 4 of the Sherman Act and § 74 of the Wilson Tariff Act.

In the case at bar, moreover, the Government has not merely charged the entry into a conspiracy with unlawful purpose and aim, but also the actual attainment of the ends of that conspiracy by various overt acts. The *Banana Case, supra,* is not authority upon the present case. The cases which followed it establish the rule that even acts done abroad which are lawful there may be the basis of a suit if they are operative here and are unlawful under our law. *United States* v. *Nord Deutscher Lloyd,* 223 U. S. 512; *United States* v. *Pacific & Arctic Co.,* 228 U. S. 87; *United States* v. *Twenty Five Packages of Panama Hats,* 231 U. S. 358; *United States* v. *Bowman,* 260 U. S. 94; *United States* v. *American Tobacco Co.,* 221 U. S. 106.

The anti-trust provisions of the Wilson Tariff Act are particularly directed against restraints upon foreign commerce by importers.

Repeal by the State of Yucatan of the discriminatory legislation would not render the case moot.

*Mr. Winthrop W. Aldrich* for appellee Sisal Sales Corporation.

It is clear from the allegations of the petition that the alleged monopoly depended entirely upon the discriminatory tax laws of the State of Yucatan in favor of Comisión Exportadora. The " unlawful agreement " alleged to have been made by a number of the defendants, in pursuance of which it is claimed the monopoly resulted, contemplated that Castellanos should proceed to Yucatan, Mexico, and " cause to be enacted in the Republic of Mexico or the States of Yucatan and Campeche any laws or regulations necessary to create a monopoly of the sisal produced in said States and such laws and regulations as might be necessary for a reduction of acreage and control of prices." Prior to the enactment of the discriminatory tax laws competition existed, and immediately upon the enactment thereof competition ceased.

It is manifest that the creation of a monopoly by the laws of a foreign State would not constitute a violation of our anti-trust statutes. *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347.

It would be utterly futile to grant the injunction prayed for in the petition, for, if granted, it would not affect the discriminatory tax laws of the State of Yucatan by virtue of which the monopoly is alleged to have been created and become effective; nor would it prevent the Comisión Exportadora from continuing to sell sisal in the United States through agencies other than the defendants and with other financial support.

*Mr. Harold R. Medina* for appellee Hanson & Orth et al.

The petition alleges a monopoly existing as the direct result of a series of enactments, proclamations and decrees of sovereign foreign governments without which nothing remains of the alleged conspiracy in this case.

(1) A conspiracy to effect monopoly by means of enact-ments, proclamations and decrees of a sovereign foreign government is not within the scope of the Anti-Trust laws of the United States, and the decision in the *American Banana Case,* 213 U. S. 347, is conclusive on that point. (2) Moreover, the question raised by the existence of the foreign government monopoly in this case is a broad international, economic and political one, and in so far as the United States conceives itself to be injured by such monopoly, the remedy should not be attempted by the courts but by the executive and legislative departments of the United States.

Mr. JUSTICE McREYNOLDS delivered the opinion of the Court.

The United States seek an injunction to prevent appellees from taking further action in pursuance of a contract, combination or conspiracy said to be forbidden by the Sherman Anti-trust Act and the Wilson Tariff Act as amended, c. 647, 26 Stat. 209; c. 349, 28 Stat. 509, 570; c. 40, 37 Stat. 667. The trial court regarded *American Banana Co.* v. *United Fruit Co.,* 213 U. S. 347, as controlling; held that no cause of action had been alleged; and dismissed the bill upon motion.

The bill is confused, difficult to follow, and an excellent example of bad pleading. An order should direct that it be recast and conformed to the established rules. Courts ought not to be burdened by rambling and obscure statements. Nevertheless, we think enough is alleged to indicate a meritorious cause and to require reversal of the judgment below.

Appellees are three banking corporations doing business at New York and New Orleans; two Delaware corporations—The Eric and the Sisal Sales—organized to deal in sisal; a Mexican corporation—Comisión Exportadora de Yucatan—which buys sisal from the producers;

certain officers and agents of the foregoing corporations; and members of Hanson and Orth, brokers.

Sisal is the fiber of the henequen plant, a native of Mexico, and from it is fabricated more than eighty per centum of the binder twine used for harvesting our grain crops. The annual requirements of the United States are from two hundred and fifty to three hundred million pounds. During one year a million bales—375 pounds each—were imported. Adequate quantities can be obtained only from Yucatan. The plant is extensively cultivated there and the supply has often exceeded market demands. Prices paid to producers have varied from less than four to seven or eight cents per pound.

Prior to 1919 appellee banks advanced large sums to parties endeavoring to monopolize importation and sale of sisal in the United States. The Mexican corporation, Comisión Reguladora del Mercado de Henequen, was utilized as an important instrumentality for making necessary purchases, and legislation favorable to it was secured. For a time the scheme succeeded; then came collapse. Through foreclosure of liens held to secure their loans (several million dollars) appellee banks acquired four hundred thousand bales of fiber stored in this country. About that time, through change of laws, the Yucatan markets were again opened; competition became active and prices declined.

Thereupon, appellee banks, acting jointly and within the United States, entered into and undertook to make effective another and somewhat different combination or scheme to control the sisal market, with the ultimate purpose of selling their holdings, recouping losses and securing large gains. Later, the other defendants became parties thereto.

As the direct outcome of this unlawful combination, conspiracy and accompanying contracts, it is alleged—

Appellees have secured a monopoly of interstate and foreign commerce in sisal. The Comisión Exportadora de Yucatan has become sole purchaser of sisal from producers and the Sisal Sales Corporation, sole importer into the United States. There is no longer any competition in the trade; excessive prices are arbitrarily fixed. The sisal acquired by the banks during 1919 has been sold; undue profits and commissions have been and are demanded; the conspirators have realized great sums at the expense of our manufacturers and farmers.

All steps necessary to bring about the above-stated results have been deliberately taken by appellees. Some of them are stated below.

The Eric Corporation, organized in August, 1919, and owned and financed by the banks, took over the large stocks of sisal acquired by them through foreclosure, also two hundred and fifty thousand bales accumulated in Yucatan. Laws favorable to it were solicited and secured from the governments of Mexico and Yucatan. Under them, and by the use of large sums supplied by the banks, that corporation and its agents soon became everywhere the dominant factors in the sisal trade. Prior to January, 1921, the Mexican corporation, Comisión Reguladora del Mercado de Henequen, was the agency for buying and selling sisal in that country; but about that time its business collapsed. Thereupon, the Comisión Monetaria was organized under the same laws, furnished with large sums of money and utilized for such purposes. The governments of both Mexico and Yucatan were persuaded to pass discriminatory legislation, and all other buyers were forced out of the markets. But because of the great supply of fiber this plan also proved unsuccessful and The Eric Corporation was obliged to increase its large holdings.

Later, by procurement of the banks, the Sisal Sales Company was organized to deal in sisal, and Hanson and

Orth became its managers. It took title to the sisal held by The Eric Corporation. The old Comisión Reguladora del Mercado de Henequen was revived as the Comisión Exportadora de Yucatan and again became the active agent for buying and selling in Mexico. Laws were solicited and passed which gave it advantages over all others. Under these, and by the use of funds supplied by the banks, it soon became the sole buyer of sisal from the producers. It also acquired the fiber held by the Sisal Sales Corporation on storage in the United States. Thereupon, the Sisal Sales Corporation, through contracts, became the exclusive selling agent of the Comisión Exportadora de Yucatan in all markets of the world, and agreed to furnish the funds necessary for their joint operations. Appellees thus, and by constant manipulation of the markets, acquired complete dominion over them, destroyed all competition, obtained power to advance and arbitrarily to fix excessive prices, and have made unreasonable exactions.

Accepting as true the allegations of the bill—roughly summarized above—it is plain enough that appellees are parties to a successful plan to destroy competition and to control and monopolize the purchase, importation and sale of sisal. The Sherman Act inhibits contracts, combinations and conspiracies to destroy competition in interstate and foreign trade and commerce, as well as attempts to monopolize such trade. Sections 73 and 74 of the Wilson Tariff Act, as amended,* declare unlawful

---

* Wilson Tariff Act, Aug. 27, 1894, as amended by Act of Feb. 12, 1913.

SEC. 73. That every combination, conspiracy, trust, agreement, or contract is hereby declared to be contrary to public policy, illegal, and void when the same is made by or between two or more persons or corporations either of whom, as agent or principal, is engaged in importing any article from any foreign country into the United States, and when such combination, conspiracy, trust, agreement, or

every combination, conspiracy, trust, agreement or contract intended to operate in restraint of trade in, or free competition in respect of, or intended to increase the market price of any article when one of the parties is engaged in importing the same, and give the courts power to prevent and restrain those who violate the Act.

The circumstances of the present controversy are radically different from those presented in *American Banana Co.* v. *United Fruit Co.,* supra, and the doctrine there approved is not controlling here. The Banana Company sued for treble damages under the Sherman Act, basing

---

contract is intended to operate in restraint of lawful trade, or free competition in lawful trade or commerce, or to increase the market price in any part of the United States of any article or articles imported or intended to be imported into the United States, or of any manufacture into which such imported article enters or is intended to enter. Every person who is or shall hereafter be engaged in the importation of goods or any commodity from any foreign country in violation of this section of this Act, or who shall combine or conspire with another to violate the same, is guilty of a misdemeanor, and on conviction thereof in any court of the United States such person shall be fined in a sum not less than one hundred dollars and not exceeding five thousand dollars, and shall be further punished by imprisonment, in the discretion of the court, for a term not less than three months nor exceeding twelve months.

SEC. 74. That the several circuit courts of the United States are hereby invested with jurisdiction to prevent and restrain violations of section seventy-three. of this Act; and it shall be the duty of the several district attorneys of the United States, in their respective districts, under the direction of the Attorney-General, to institute proceedings in equity to prevent and restrain such violations. Such proceedings may be by way of petitions setting forth the case and praying that such violations shall be enjoined or otherwise prohibited. When the parties complained of shall have been duly notified of such petition the court shall proceed, as soon as may be, to the hearing and determination of the case; and pending such petition and before final decree, the court may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises.

its claim upon acts done outside the United States and
not unlawful by the law of the place. " The substance
of the complaint is that, the plantation being within the
*de facto* jurisdiction of Costa Rica, that state took and
keeps possession of it by virtue of its sovereign power.
But a seizure by a state is not a thing that can be com-
plained of elsewhere in the courts." "A conspiracy in
this country to do acts in another jurisdiction does not
draw to itself those acts and make them unlawful, if they
are permitted by the local law."

Here we have a contract, combination and conspiracy
entered into by parties within the United States and made
effective by acts done therein. The fundamental object
was control of both importation and sale of sisal and com-
plete monopoly of both internal and external trade and
commerce therein. The United States complain of a vio-
lation of their laws within their own territory by parties
subject to their jurisdiction, not merely of something done
by another government at the instigation of private par-
ties. True, the conspirators were aided by discriminating
legislation, but by their own deliberate acts, here and else-
where, they brought about forbidden results within the
United States. They are within the jurisdiction of our
courts and may be punished for offenses against our
laws.

Moreover, appellees are engaged in importing articles
from a foreign country and have become parties to a con-
tract, combination and conspiracy intended to restrain
trade in those articles and to increase the market price
within the United States. Such an arrangement is
plainly denounced by § 73 of the Wilson Tariff Act, as
amended.

The decree of the court below must be

*Reversed.*

MR. JUSTICE STONE took no part in the consideration or
decision of this cause.