**SANIB CORPORATION, Plaintiff,**

v.

**UNITED FRUIT COMPANY, Defendant.**

United States District Court
S. D. New York.
Nov. 22, 1955.

Edward Nathan, New York City, for plaintiff.

Davis, Polk, Wardwell, Sunderland & Kiendi, New York City, for defendant, Ralph M. Carson, New York City, Sam G. Baggett, Boston, Mass., of counsel.

McGOHEY, District Judge.

The defendant in this suit under the Antitrust laws for treble damages totaling $3,111,000, moves, pursuant to Rule 12 of the Federal Rules of Civil Procedure, 28 U.S.C.A., to dismiss the complaint "on the merits" for failure to state a claim on which relief can be granted and "for judgment accordingly," because, as it contends, the complaint shows on its face that the unlawful conspiracy and monopoly charged were effectuated by acts which are not even alleged to be unlawful in Honduras where they were performed, and are in any event beyond reach of our Antitrust laws. The decision in American Banana Co. v. United Fruit Co.[1] it is urged, re-

quires dismissal. The Court does not agree, and for the reasons about to be stated the motion is denied.

The complaint, consisting of 27 pages, alleges in substance the following.

The defendant, hereafter called United, was organized under the laws of New Jersey in 1899. At all times here relevant it maintained an office at Pier 3 North River in New York City from which it carried on the business of growing, importing and selling bananas in interstate and foreign commerce.

The plaintiff, hereafter called Sanib, was organized under the laws of New York in 1935 and, until 1954 when the acts here complained of forced its voluntary dissolution,[2] it maintained its principal office in New York City from which it carried on the business of manufacturing, distributing and selling in interstate and foreign commerce, dehydrated banana powder and other banana products.

United is the largest importer of bananas in this country. It owns extensive properties and facilities in each of the principal banana growing countries in Central and South America, including Honduras. The western zone of the latter's north coastal region was at all relevant times dominated by United through ownership and control, either directly or by wholly owned subsidiaries, of banana growing plantations and of rail, shipping, port, power and other facilities on which Sanib depended, including fuel oil.

In 1937 Sanib arranged to purchase from United "reject bananas," that is, those deemed unsuitable for export. It thereupon erected a dehydration plant just outside Puerto Cortes, the principal port of the Honduras region dominated by United. From 1937 until 1946, the latter fulfilled all the requirements of Sanib, which thereupon developed a profitable and expanding market for its products in interstate and foreign commerce.

---

1. 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826.

2. Suit is maintained pursuant to § 105 of the New York Stock Corporation Law, McK.Consol.Laws, c. 59.

Indeed by 1943, Sanib's plant became inadequate fully to supply the market's demands.

In 1946, United erected a dehydration plant in Honduras and commenced manufacture of a banana flake product which competed with Sanib's powder and other banana products. From that time on, up to Sanib's dissolution in 1954, except for two small shipments in 1949 and regular and adequate shipments during the first five months of 1950, United completely shut off Sanib's supply of rejects, although United throughout had ample stores available. In 1950 Sanib began negotiations to purchase rejects from independent growers and to operate a plantation of its own. These plans were dropped when United resumed shipments in January. When United, in May, again ceased selling to Sanib, the latter, having no source of supply, could not fill its orders.

The foregoing and many similar acts were done pursuant to a conspiracy and combination between United and its subsidiaries, particularly Tela Railroad Company, a Delaware corporation operating in Honduras. The conspiracy and the acts in furtherance of it "were conceived, carried out and made effective" partly in the United States and partly in Honduras, with the result that United monopolized or attempted to monopolize interstate and foreign trade in banana products and eliminated Sanib as a competitor therein to the latter's damage.

On this motion to dismiss, the allegations just summarized must be accepted as true. Moreover the language of the complaint must be construed to give the plaintiff "the benefit of reasonable intendments in his allegations".[3] Read in the light of these canons, it is clear that the complaint alleges agreements between United and at least its subsidiary Tela which if made and executed wholly within the United States, would certainly violate our antitrust laws. The common ownership of United and Tela does not insulate these corporations from the antitrust laws' sanctions.[4] That the acts effectuating the conspiracy were performed partly in Honduras does not put the conspiracy beyond reach of those laws, since the agreement in the execution of which these were done, obviously was intended to, and in fact did, affect the interstate and foreign commerce of the United States.[5] The American Banana Co. decision is not contrary. There the complaint was viewed as claiming damage not from the alleged monopoly as such, but from seizure of the plaintiff's property by a foreign government at the defendant's urging. The Supreme Court agreed with the District Court and the Circuit Court of Appeals that a sovereign state's acts within its own jurisdiction were never intended by Congress to come within the prohibitions of its enactments.[6] The facts here alleged distinguish this complaint from that of the American Banana Co. This one falls, rather, within the decisions in Thomsen v. Cayser[7] and United States v. Sisal Sales Corporation.[8]

Settle order.

3. Dioguardi v. Durning, 2 Cir., 139 F. 2d 774, 775; Virgin Islands Corp. v. W. A. Taylor & Co., 2 Cir., 202 F.2d 61.

4. United States v. Yellow Cab Co., 332 U.S. 218–227, 67 S.Ct. 1560, 91 L.Ed. 2010; Timken Roller Bearing Co. v. United States, 341 U.S. 593–598, 71 S. Ct. 971, 95 L.Ed. 1199.

5. See United States v. Aluminum Co., etc., 2 Cir., 148 F.2d 416–444 and cases there cited.

6. See Steele v. Bulova Watch Co., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252.

7. 243 U.S. 66–88, 37 S.Ct. 353, 61 L. Ed. 597.

8. 274 U.S. 268–275, 276, 47 S.Ct. 592, 71 L.Ed. 1042.