**TODHUNTER–MITCHELL & CO., LTD.**

v.

**ANHEUSER–BUSCH, INC.**

**Civ. A. No. 70–676.**

United States District Court,
E. D. Pennsylvania.

Oct. 11, 1974.

Henry Kolowrat, Philadelphia, Pa., for plaintiff.

Benjamin M. Quigg, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Seeking injunctive relief and treble damages, Todhunter-Mitchell & Co., Ltd., instituted this private antitrust action against Anheuser-Busch, Inc., this country's largest brewer of beer. The complaint alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. The instant case proceeded to trial and the Court, sitting as the finder of fact, concluded at the close of the evidence that certain marketing practices of the defendant constituted a *per se* violation of Section 1 of the Sherman Act. The Court's findings of fact and conclusions of law were set forth in a written Opinion filed on February 27, 1974. Presently before the Court is the defendant's motion for amendment of findings and judgment or, in the alternative, for a new trial.

Anheuser-Busch has advanced several arguments in support of the above motion. The Court has carefully considered the factual and legal contentions raised by the defendant and the memorandum of law submitted in support thereof and concludes that the findings of fact and conclusions of law contained in the previous opinion should remain substantially unchanged. It is, therefore, unnecessary to reiterate the operative facts surrounding this litigation or the discussion of what the Court con-

siders to be the relevant law. Nonetheless, the Court believes that an analysis of the question of the applicability of the Sherman Act to those facts is appropriate because of the complexity and legal significance of certain issues.

Todhunter-Mitchell, plaintiff, is a Bahamian corporation engaged in the wholesale distribution of liquor and beer in the Bahama Islands. In direct competition with the plaintiff is Bahama Blenders, Ltd., also a Bahamian corporation principally engaged in the large-scale distribution of alcoholic beverages in the Bahamas. The beer produced by Anheuser-Busch, which includes Budweiser, Michelob and Busch-Bavarian, is distributed primarily through approximately 950 wholesalers. Bahama Blenders is the duly-appointed Anheuser-Busch wholesaler in the Bahama Islands. The complaint alleged and the evidence proves that the plaintiff was unable to import Budweiser beer for resale in the Bahamas due to the restraints imposed by the defendant on its authorized wholesalers located in Miami and New Orleans. The plaintiff established that the above two wholesalers were restrained from selling Budweiser to the plaintiff in order to eliminate any price competition in the sale of Budweiser on the Bahama Islands, thereby insuring the continued monopolistic position of Bahama Blenders, defendant's only wholesaler on the Bahama Islands.

Anheuser-Busch asserts that the Sherman Act does not apply to a refusal to deal which produces only the elimination of competition between two foreign corporations operating completely in a foreign market. The Court is in substantial agreement with the defendant's contention that the ultimate result of the restraint imposed on the Miami and New Orleans wholesalers is the elimination of competition in the Bahama Islands. However, the territorial restraints imposed upon the Miami and New Orleans distributors directly affected the flow of commerce out of this country. Restraints which directly affect the flow of foreign commerce into or out of this country are subject to the provisions of Section 1 of the Sherman Act. Von Kalinowski, Antitrust Laws and Trade Regulations, Vol. 1, § 5.02 [2] (1971).

One need look no further than the language of the Sherman Act itself to be convinced that Congress intended the antitrust laws to be applicable in cases such as this. Section 1 of the Act provides expressly that "Every contract, combination . . . in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The flow of commerce between the United States and the Bahama Islands was directly restrained by the restriction placed on the exportation of Budweiser beer by Anheuser-Busch.

In United States v. Aluminum Co. of America, 148 F.2d 416 (2nd Cir. 1945), the court held that an agreement between foreign corporations to fix production quotas was illegal under the Sherman Act because the unlawful agreement was intended to and did affect imports into the United States. 148 F.2d at p. 444. The court in the above case focused not upon the geographic location of the responsible parties but upon the consequences of the unlawful agreement. With respect to the facts of this case, one of the major consequences of the illicit agreement between Anheuser-Busch and the Miami wholesaler is the restraint of American trade with the Bahama Islands. The strictures of Section 1 of the Sherman Act are, therefore, applicable to the facts of this case.

Anheuser-Busch places considerable reliance upon the case of American Banana Co. v. United Fruit Co., 213 U.S. 347, 29 S.Ct. 511, 53 L.Ed. 826 (1909), wherein the Supreme Court declared that "A conspiracy in this country to do acts in another jurisdiction does not draw to itself those acts and make them unlawful, if they are permitted by the local law." 213 U.S. at p. 359, 29 S.Ct. at p. 514. *American Banana* is not controlling here for two reasons.

First, the case at bar involved a conspiracy in this country to do acts in this country and not in a foreign jurisdiction. As this Court discussed in the Opinion of February 27, 1974, the acts which constitute the antitrust violation occurred primarily in this country and involved the commerce of the United States with a foreign nation. Secondly, subsequent cases have held that *American Banana* is inapplicable to situations where the activities of the defendant have an impact within the United States and upon its foreign trade. Continental Ore Co. v. Union Carbide, 370 U.S. 690, 705, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); United States v. Sisal Sales Corp., 274 U.S. 268, 275–276, 47 S.Ct. 592, 71 L.Ed. 1042 (1927).

■ The Court is aware that it did not explicitly find as a fact that unlawful restraint imposed by Anheuser-Busch on the Miami and New Orleans wholesalers directly affected the flow of foreign commerce. Accordingly, the record warrants, and the Court will, amend its findings of fact to include the finding that the territorial restraint imposed by Anheuser-Busch in violation of the Sherman Act directly affected the flow of foreign commerce out of this country.[1]

■ Anheuser-Busch contends that the Court's calculation of the amount of damages to be awarded to plaintiff is erroneous. Several alleged errors in calculation and judgment are cited by defendant. The position of this Court is that just and reasonable damages were awarded under the evidence and the applicable law in this case. Extensive discussion of defendant's contentions regarding the damage award is, therefore, unnecessary. An examination of defendant's motion for amendment of findings has, however, demonstrated to the Court that the total amount of damages to be awarded plaintiff must be modified. Defendant is correct that damages should not be awarded for the period of time beyond the date of the conclusion of the trial. See, Shayne v. Madison Square Garden Corporation, 491 F.2d 397, 401 (2nd Cir. 1974); Connecticut Importing Co. v. Frankfort Distilleries, 101 F.2d 79 (2nd Cir. 1939). Accordingly, Finding of Fact No. 43 will be modified to reflect the correct time period for the award of damages, to wit, from February, 1969, to August, 1972.

In addition, Finding of Fact No. 43 will be further revised to reflect the correct total number of cases of beer lost by Todhunter-Mitchell due to the restrictions imposed by Anheuser-Busch. The following table will embody the Court's revised finding as to damages to be awarded plaintiff:

| Period | Selling Price Per Case | Total Cost of Sales | Lost Profit Per Case | Cases Lost | Total Profit Lost |
|--------|------------------------|---------------------|----------------------|------------|-------------------|
| Feb.–April, '69 | $5.15 | $4.75 | $ .40 | 6,250 | $ 2,500.00 |
| May–July, '69 | 5.26 | 4.75 | .51 | 6,250 | 3,187.50 |
| Aug., '69–Dec., '70 | 8.24 | 6.75 | 1.49 | 20,500 | 30,545.00 |
| Jan.–July, '71 | 8.35 | 6.75 | 1.60 | 5,300 | 8,480.00 |
| Aug., '71–Aug., '72 | 7.96 | 6.75 | 1.21 | 9,550 | 11,555.50 |
| | | | | Total damages— | $ 56,268.00 |
| | | | Trebled, Todhunter-Mitchell's damages are .......... | | $168,804.00 |

---

1. The Bahama Islands may properly be considered a "foreign nation" within the meaning of Section 1 of the Sherman Act, in that the Islands are a geographical and political entity entirely separate from and independent of the United States of America.