A.G.S. ELECTRONICS, LTD., Plaintiff,

v.

B.S.R. (U.S.A.), LTD., and B.S.R., Ltd., Defendants.

No. 76 Civ. 4000.

United States District Court,
S. D. New York.

Feb. 27, 1978.*

* Second Circuit aff'd on opinions below on November 6, 1978.

Cooperstein & Wolfeld, Garden City, N. Y., for plaintiff.

Wald, Harkrader & Ross, Washington, D. C., Smith, Stiebel, Alexander, Saskor, P. C., New York City, for defendants.

GAGLIARDI, District Judge.

A.G.S. Electronics, Ltd. ("AGS") has commenced this action for treble damages under the federal antitrust laws and for breach of contract under state law. As to the federal causes of action contained in Counts I–III of the amended complaint, jurisdiction is asserted pursuant to 28 U.S.C. § 1331. As to the state law claims set forth in Counts IV and V, AGS invokes this court's diversity jurisdiction, 28 U.S.C. § 1332, and principles of pendent jurisdiction. Defendant B.S.R. (U.S.A.), Ltd. ("BSR–USA") has moved to dismiss Counts I–III of the amended complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., on the grounds that they fail to state claims upon which relief may be granted and that AGS lacks standing to sue.[1] As explained more fully below, defendant's motion is granted.

For the purposes of this motion, the allegations of the amended complaint must be deemed true. All parties to this lawsuit engage in the sale and manufacture of audio equipment and the component parts thereof. This equipment includes: 1) "record changers", *i. e.*, motorized metal platters and tone arms affixed to a metal base, which are sold to original equipment manufacturers for incorporation into record players or full audio systems; 2) "record players", *i. e.*, assembled modules comprised of record changers, line cords, phono sockets, dust covers and wooden bases, which are sold to ultimate consumers; and 3) "full audio systems", consisting of record players, receivers, amplifiers, speakers and, in some cases, tape players, which are also sold to ultimate consumers.

Defendant BSR–USA, a New York corporation, is the wholly-owned subsidiary of defendant B.S.R., Ltd., a British corporation. Defendants manufacture, sell and distribute record changers and record players of various qualities, including inexpensive or "low-end" record players. By March 1975, the defendants controlled in excess of 70% of the United States market in "low-end" equipment. Two affiliated corporations, Glenburn Corporation of New Jersey and Glenburn/McDonald, Inc. ("Glenburn") controlled most of the remainder of this market.

In October 1973, plaintiff AGS, a Canadian corporation, became Glenburn's exclusive distributor for Canada and the Far East. AGS purchased Glenburn changers at prices ranging from $10.37 to $13.40 per unit both for use in the manufacture of audio systems and record players under its own name and for resale to other original equipment manufacturers. Defendants' price for comparable changers were approximately $1.00 per unit higher, but Glenburn held its prices at the lower level in an effort to increase its market share.

In March 1975, the defendants acquired either all of Glenburn's assets or all of its capital stock. Since that date, the defendants have continued to sell the Glenburn line of low-end record changers and record players through a Glenburn division or subsidiary. As a direct result of this acquisition, defendants control virtually 100% of the market for low-end record changers and record players in the United States.

---

1. BSR–USA originally moved to dismiss Count IV as well for failure to state a claim, but it has since withdrawn this motion. All that is before the court, therefore, is the motion to dismiss Counts I–III. This motion is ostensibly premised on two distinct grounds: plaintiff's lack of standing and its failure to state a claim.

While defendants' briefs raise the standing defense to all three counts, however, they question the substantive sufficiency of Count I only. In light of its disposition of Count I on standing grounds, *see infra*, this court need not decide whether that Count has stated a claim upon which relief may be granted.

Prior to their acquisition of Glenburn, defendants had sold their own line of record changers to Keron Trading Ltd. ("Keron") for resale and distribution to original equipment manufacturers in Canada and the Far East, the same geographic area served by plaintiff for Glenburn. In June 1975, just three months after the Glenburn acquisition, the defendants informed AGS that it would no longer be a distributor of the Glenburn line for that area and that it would no longer be able to purchase Glenburn changers from the defendants. AGS was further advised that the Canada and Far East distributorship would henceforth be handled by Keron and that any purchases of changers which AGS sought to make would have to be made through Keron.

At about the same time, defendants increased the price of Glenburn changers to equal the prices they charged for their comparable changers. Thereafter, the prices for both the Glenburn line and for defendants' comparable line were further increased by approximately 30%. Defendants have been able to impose these price increases because of the almost complete lack of competition in the sale and distribution of changers in the United States.

The antitrust counts of the amended complaint attack the defendants' conduct on

three distinct legal theories. Count I alleges that the manufacture, sale and distribution of low-end record changers and record players in the United States is a "line of commerce among the several states" within the meaning of § 7 of the Clayton Act, 15 U.S.C. § 18,[2] and that defendants' acquisition of Glenburn violated § 7 in that it tended substantially to lessen competition and to create a monopoly in that line of commerce. Count II is premised upon § 1 of the Sherman Act, 15 U.S.C. § 1,[3] and alleges that the defendants' refusal to sell to AGS resulted from a contract, combination or conspiracy with Keron to exclude plaintiff from the market for defendants' changers and is motivated by defendants' desire to maintain prices at an artificially high level and to cause the public to pay higher prices than if competitive practices were followed. Finally, Count III of the amended complaint states that defendants' acts were taken for the purpose of monopolizing, and constituted an attempt to monopolize or a conspiracy to monopolize the market for the sale and distribution of record changers or low-end record players in the United States and North America in violation of § 2 of the Sherman Act, 15 U.S.C. § 2.[4] Plaintiff has repeated the

2. 15 U.S.C. § 18 states in pertinent part:
*Acquisition by one corporation of stock of another*
No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.
No corporation shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of one or more corporations engaged in commerce, where in any line of commerce in any section of the country, the effect of such acquisition, of such stocks or assets, or of the use of such stock by the voting or granting of proxies or otherwise may be substantially to lessen competition, or to tend to create a monopoly. . .

3. 15 U.S.C.A. § 1 (West Cum.Supp.1977) states in pertinent part:
*Trusts, etc., in restraint of trade illegal; penalty*
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. . . .
A concerted refusal to deal has been held to be a *per se* violation of § 1. *Klor's Inc. v. Broadway Hale Stores, Inc.,* 359 U.S. 207, 210, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).

4. 15 U.S.C.A. § 2 (West Cum.Supp.1977) states in pertinent part:
*Monopolizing trade a felony; penalty*
Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony
. . .

same basic allegation of injury under each of these counts—the inability to act as a Glenburn distributor and the consequent loss of profits, promotional expenses and capital expenditures.

Defendants assert that AGS lacks standing to assert any of these claims because it has failed to allege any nexus between the injury it has suffered and any lessening of competition in the United States. Defendants also contend that AGS is beyond the "target area" of any alleged violation.

■ Section 4 of the Clayton Act, the source of the private treble damage remedy under the antitrust laws, states that: "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . and shall recover threefold the damages by him sustained." 15 U.S.C. § 15. Recognizing the uniqueness of the treble damage remedy, the courts have narrowed this broad statutory grant of the right to sue. The guiding principles are as follows:

> There must be a causal connection between an antitrust violation and an injury sufficient . . . to establish that the violation was a "material cause" or a "substantial factor" in the occurrence of damage. And this connection must also link a specific form of illegal act to a plaintiff engaged in the sort of legitimate activities which the prohibition of this type of violation was clearly intended to protect.

*Billy Baxter, Inc. v. Coca-Cola Co.*, 431 F.2d 183, 187 (2d Cir. 1970), *cert. denied*, 401 U.S. 923, 91 S.Ct. 877, 27 L.Ed.2d 826 (1971). *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977). Thus, the plaintiff must show that it is within the "target area" of the alleged antitrust violation, i. e., "a person or business against whom competitive aim [has been] taken." *Calderone Enterprises Corp. v. United Artists Theatre Circuit, Inc.*, 454 F.2d 1292, 1296 n.2 (2d Cir. 1971), *cert. denied*, 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972). *Accord, Long Island Lighting Co. v. Standard Oil Co. of Cal.*, 521 F.2d 1269, 1274 (2d Cir. 1975), *cert.*

*denied*, 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 83 (1976); *GAF Corp. v. Circle Floor Co.*, 463 F.2d 752, 757–58 (2d Cir. 1972), *cert. dismissed*, 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973). The "target area" test is not a talismanic guide to decision; this court must "examine the form of violation alleged and the nature of its effect on a plaintiff's own business activities." *Billy Baxter, Inc. v. Coca-Cola Co., supra*, 431 F.2d at 187.

■ AGS complains of two distinct antitrust violations by the defendants: 1) the acquisition of Glenburn which has given them virtually 100% of the United States market for record changes and low-end record payers; and 2) the termination of AGS's exclusive Canadian and Far Eastern distributorship of such changers, allegedly resulting from a conspiratorial refusal to deal. However, the only injuries of which AGS complains—the loss of profits, promotional expenses and capital expenditures— all flow from the termination of its distributorship rather than any anticompetitive effects of the defendants' acquisition of Glenburn. As such, AGS has failed to allege a causal connection between its injury and the allegedly unlawful acquisition. Accordingly, Count I of the amended complaint must be dismissed.

The significant facts of *John Lenore & Co. v. Olympia Brewing Co.*, 550 F.2d 495 (9th Cir. 1977) are virtually identical to those of the instant case. Plaintiffs, former distributors of Hamm's beer, sued a manufacturer-supplier who had decided to terminate them as distributors shortly after acquiring the Hamm's label. The plaintiffs alleged that this acquisition violated § 7 of the Clayton Act. Affirming the district court's grant of defendant's motion for summary judgment, the Court of Appeals for the Ninth Circuit stated:

> [W]e agree with the district court's findings that the terminations of the distributorship were not directly and proximately caused by the challenged acquisition. Even though [plaintiffs'] injury may have ". . . occurred 'by reason of' the unlawful acquisitions, it did not occur 'by

reason of" that which made the acquisitions unlawful." The terminations were an incidental matter which the merger may have made possible, but certainly did not cause. All [plaintiffs] really allege is that because [defendant] purchased the Hamm's brand [plaintiffs were], replaced in favor of other distributors. This is insufficient to make out a case under § 7 which is concerned with competition, not competitors.

*Id.* at 499–500 (citations omitted). *Accord, Kirihara v. Bendix Corp.*, 306 F.Supp. 72, 90–91 (D.Hawaii 1969). Count I of the amended complaint, alleging that the defendants' acquisition of Glenburn violated § 7 of the Clayton Act, must therefore be dismissed for lack of standing.

As to Count II of the amended complaint, the alleged conspiracy among the defendants and Keron to refuse to deal with AGS, there is a clear causal connection between the alleged violation and AGS's injury. To have standing to assert this claim, however, AGS must allege "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., supra,* 97 S.Ct. at 697.

The Sherman Act clearly prohibits conspiracies "in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. "The basic approach to Sherman Act construction is the broad premise that Congress exercised therein the full scope of its powers under the Commerce clause of the Constitution." *Pacific Seafarers, Inc. v. Pacific Far East Line, Inc.,* 131 U.S.App.D.C. 226, 404 F.2d 804, 814–17 (1968), *cert. denied,* 393 U.S. 1093, 89 S.Ct. 872, 21 L.Ed.2d 784 (1969). Thus, conspiracies to restrain the export of goods manufactured in the United States are actionable under the Sherman Act. *See e. g., Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 704–05, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962); *Timken Roller Bearing Co. v. United States,* 341 U.S. 593, 596, 71 S.Ct. 971, 95 L.Ed. 1199 (1951). Although AGS is a Canadian corporation, a foreign entity is not ipso facto barred from bringing suit under the Ameri-

can antitrust laws. *Pfizer, Inc. v. Government of India,* 434 U.S. 308, 313–314, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978); *see* 15 U.S.C. §§ 7, 12 (foreign corporation is "person" for purposes of Sherman and Clayton Acts). Nor is the fact that AGS's injury may be characterized as having been incurred outside United States borders determinative of its standing to sue. *Industria Siciliana Asfalti Bitumi, S.p.A. v. Exxon Research & Engineering Co.,* [1977–1] Trade Reg.Rep. (CCH) ¶ 61,256, at 70,783 (S.D.N. Y.). Nevertheless, Congress' foremost concern in enacting the antitrust laws was the protection of American consumers and competitors. United States Department of Justice, Antitrust Division, Antitrust Guide for International Operations 4–5 (Jan. 26, 1977); *see Pfizer, Inc. v. Government of India, supra,* 434 U.S. at 314, 98 S.Ct. at 588. As such, the courts have applied American law to an international conspiracy only when it has been shown that the agreement was intended to, and did, affect American foreign trade. *See Continental Ore Co. v. Union Carbide & Carbon Corp., supra,* 370 U.S. at 705, 82 S.Ct. at 1414; *United States v. Aluminum Co. of America,* 148 F.2d 416, 443–44 (2d Cir. 1945). As Judge Learned Hand wrote: "We should not impute to Congress an intent to punish all whom its courts can catch, for conduct has no consequences within the United States." *United States v. Aluminum Co. of America, supra,* 148 F.2d at 443.

The defendants' alleged refusal to deal with AGS clearly has no impact upon American consumers. The terminated distributorship extended only to Canada and the Far East; if any consumers have suffered from the refusal to sell to AGS, they are Canadian or Far Eastern consumers. Moreover, AGS has failed to allege any anticompetitive impact on American exporters. Thus, the case upon which AGS principally relies, *Todhunter-Mitchell & Co. v. Anheuser-Busch, Inc.,* 383 F.Supp. 586 (E.D.Pa.1974), is readily distinguishable. In *Todhunter,* the plaintiff, a Bahamian liquor distributor, brought a § 1 action against an American beer producer for prohibiting two

of its authorized American wholesalers from selling Budweiser beer to the plaintiff. This refusal to deal insured the defendant's sole Bahamian distributor of a monopoly over the Bahamian market for Budweiser beer. In response to the defendant's assertion that the Sherman Act does not apply to a refusal to deal which eliminates competition between two foreign corporations operating completely in a foreign market, the court stated:

> [T]he territorial restraints upon the Miami and New Orleans distributors directly affected the flow of commerce out of this country. . . . The flow of commerce between the United States and the Bahama Islands was directly restrained by the restriction placed upon the exportation of Budweiser beer by Anheuser-Busch.

*Id.* at 587. *Accord, Industria Siciliana Asfalti Bitumi, S.p.A. v. Exxon Research & Engineering Co., supra,* [1977–1] Trade Reg. Rep. (CCH) ¶ 61,256, at 70,783–85 (foreign plaintiff alleging defendants' reciprocal dealing caused it to purchase services from them at greater cost than an American competitor would have charged). By contrast, AGS has made no allegation of domestic impact resulting from defendants' refusal to deal in the form of either foreclosure of American expert opportunities or a decreased flow of American exports to Canada and the Far East. Accordingly, Count II of the amended complaint must be dismissed.

Count III of the amended complaint, premised on § 2 of the Sherman Act, is somewhat cryptically pleaded. It merely incorporates by reference the factual allegations contained in the previous counts and states that "the acts and deeds of the defendants are for the purpose of monopolizing . . . the market for the sale and distribution of changers and low-end record players in the United States and North America." It is uncertain whether this allegation refers to the acquisition of Glenburn or the concerted refusal to deal. To the extent that AGS is complaining of the acquisition, however, it is clear that there is no causal connection between its injury and the alleged violation. If the refusal to deal is the action complained of, AGS has failed to allege any facts indicating that this restraint has had an impact upon United States commerce. Consequently, this count too must be dismissed.

The courts have been notably reluctant to dispose of antitrust cases at the pleading stage. *See Radovich v. National Football League,* 352 U.S. 445, 453–54, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957). There may be facts which AGS has not alleged which might enable it to state antitrust causes of action at least as to Counts II and III of the amended complaint. Accordingly, Count I of the amended complaint is dismissed with prejudice and Counts II and III are dismissed with leave to file a second amended complaint within twenty days.

So Ordered.

## DIRECTION FOR ENTRY OF FINAL JUDGMENT

By decision dated February 27, 1978, this court granted defendant B.S.R. (U.S.A.), Ltd.'s motion to dismiss certain counts of the amended complaint. Count I of the amended complaint was dismissed with prejudice; leave to replead was granted as Counts II and III. Plaintiff's counsel has informed the court that no further factual allegations can be made with respect to Counts II and III and that any repleading as to those counts would be fruitless. As such, plaintiff's counsel requests an order pursuant to Rule 54(b), Fed.R.Civ.P., directing the clerk to enter final judgment against the plaintiff as to Counts I—III of the amended complaint. Defendant B.S.R., Ltd. has not yet moved or answered, but if it were to move on the same grounds as B.S.R. (U.S.A.), Ltd. has done, this court's disposition would be no different. Under the circumstances, the court expressly determines that there is no just reason for delay and expressly directs the clerk to enter final judgment against the plaintiff on Counts I—III of the amended complaint.

So Ordered.