United States Court of Appeals,

Eleventh Circuit.

No. 96-6080.

FLORIDA SEED COMPANY, INC., a corporation, Frit Industries, Inc., a corporation, Plaintiffs-Counter-Defendants-Appellants,

v.

MONSANTO COMPANY, a corporation, Defendant-Counter-Claimant-Appellee.

Feb. 18, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CV-94-D-514-N), Ira De Ment, Judge.

Before TJOFLAT and DUBINA, Circuit Judges, and STAGG[*], Senior District Judge.

DUBINA, Circuit Judge:

Plaintiffs/Appellants Florida Seed Company, Inc. ("Florida Seed") and Frit Industries ("Frit") appeal the district court's judgment dismissing their Sherman Act claim against Defendant/Appellee Monsanto Company ("Monsanto"). The district court held that Plaintiffs lacked standing to assert their antitrust claims. We affirm.

I. BACKGROUND

This case arises out of Monsanto's 1993 acquisition of the Chevron Corporation's Ortho lawn and garden business ("Ortho"). Ortho markets some 200 lawn and garden products. Florida Seed is engaged in wholesale distribution and marketing of lawn and garden products. Prior to Monsanto's acquisition of Ortho, Florida Seed handled the product lines of both Monsanto and Ortho.

---

[*]Honorable Tom Stagg, Senior U.S. District Judge for the Western District of Louisiana, sitting by designation.

The Federal Trade Commission ("FTC") believed that Monsanto's acquisition of Ortho created competitive issues as to one of Ortho's products, a nonselective herbicide called "Kleenup." Kleenup is based on glyphosate, a patented ingredient that Ortho purchases from Monsanto. Monsanto also uses glyphosate in its nonselective herbicide called "Roundup." Monsanto entered into a consent decree with the FTC agreeing to divest to a suitable purchaser the trademark "Kleenup." The agreement also provided that Monsanto would sell a significant volume of glyphosate, plus manufacturing know-how and certain regulatory approvals and filings, on a time schedule acceptable to the FTC. The consent decree does not contain any reference to the distribution channels for Kleenup.

After acquiring Ortho, Monsanto notified Florida Seed that its distributorship agreement for Ortho products would not be renewed following its expiration. Monsanto stated that the decision was part of a broader strategic decision to use fewer distributors. Following expiration of the distributorship relationship, Florida Seed refused to pay Monsanto certain amounts owed. Monsanto therefore demanded payment from Frit, which had guaranteed Florida Seed's debt. Florida Seed and Frit then filed this antitrust suit.

Plaintiffs allege that Monsanto engaged in monopolization and attempted monopolization of the residential nonselective herbicide market in violation of Section 2 of the Sherman Act by its acquisition of Ortho and its termination of Florida Seed's

distributorship.[1]  Plaintiffs contend that Monsanto's decision was aimed at damaging the value of Kleenup prior to its divestiture under the FTC consent decree.

## II. ISSUE

Whether the district court properly dismissed Plaintiffs' Sherman Act claim because they lacked standing to assert such claim.

## III. STANDARD OF REVIEW

"The question of standing is one of law." *Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438, 1448 (11th Cir.1991). Accordingly, we review *de novo* the district court's judgment of dismissal. *DeLong Equip. Co. v. Washington Mills Electro Minerals Corp.,* 990 F.2d 1186, 1194 (11th Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993).

## IV. DISCUSSION

A private plaintiff seeking damages under the antitrust laws must establish standing to sue.  Antitrust standing requires more than the "injury in fact" and the "case or controversy" required by Article III of the Constitution.  *Todorov,* 921 F.2d at 1448. Rather, the doctrine of antitrust standing reflects prudential concerns and is designed to avoid burdening the courts with speculative or remote claims.  *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 545, 103 S.Ct. 897, 912, 74 L.Ed.2d 723 (1983).  *See also*

---

[1]Plaintiffs also brought a claim under the Clayton Act, which the district court dismissed.  Plaintiffs do not contest this ruling on appeal.  Moreover, Plaintiffs asserted various claims under state law that were not ruled on by the district court and have been stayed pending this appeal.

*Todorov,* 921 F.2d at 1448 ("Antitrust standing is best understood in a general sense as a search for the proper plaintiff to enforce the antitrust laws."); PHILIP AREEDA & HERBERT HOVENKAMP, ANTITRUST LAW ¶ 334.2 at 409 (1993 Supp.).

We follow a two-pronged approach in deciding whether a plaintiff has antitrust standing. *Municipal Utils. Bd. of Albertville v. Alabama Power Co.,* 934 F.2d 1493, 1499 (11th Cir.1991). First, the plaintiff must establish that it has suffered "antitrust injury." *Id.* As the Supreme Court has made clear, to have standing antitrust plaintiffs "must prove more than injury casually linked to an illegal presence in the market [*i.e.,* but for causation]. Plaintiffs must prove antitrust injury, which is to say injury of the type that the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

Second, the plaintiff must establish that it is an efficient enforcer of the antitrust laws. *Municipal Utils. Bd. of Albertville,* 934 F.2d at 1499. This determination is predicated on the "target area test." *Austin v. Blue Cross & Blue Shield of Ala.,* 903 F.2d 1385, 1388 (11th Cir.1990). The target area test requires that an antitrust plaintiff both "prove that he is within that sector of the economy endangered by a breakdown of competitive conditions in a particular industry" and that he is "the target against which anticompetitive activity is directed." *National Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.,* 748 F.2d 602, 608 (11th Cir.1984), *cert. denied sub nom., Patterson*

*v. Buena Vista Distribution Co.,* 474 U.S. 1013, 106 S.Ct. 544, 88 L.Ed.2d 473 (1985). Basically, a plaintiff must show that it is a customer or competitor in the relevant antitrust market. *Associated General Contractors,* 459 U.S. at 539, 103 S.Ct. at 909.

### A. Standing of Florida Seed

Plaintiffs' complaint relates to Florida Seed's inability to purchase nonselective herbicides from Monsanto, not to an increase in prices or to a lessening of competition. At one time, Florida Seed was both a customer and a distributor of Kleenup. Now, Florida Seed is neither. In fact, Florida Seed admits that the "termination of [its] distributorship is at the heart of this case." Plaintiffs-Appellants Brief at 5. Nevertheless, Plaintiffs argue that they may maintain an antitrust action based on the terminated distributorship because, in their view, Monsanto violated the Sherman Act "by dealing with its own distributor in furtherance of an anticompetitive purpose." *Id.* at 26. We disagree.

The Supreme Court pointed out in *Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), that "[e]very merger of two existing entities into one, whether lawful or unlawful, has the potential for producing economic readjustments that adversely affect some persons. But Congress has not condemned mergers on that account; it has condemned them only when they may produce anticompetitive effects." *Id.* at 487, 97 S.Ct. at 696. "The objective in preventing certain mergers is ... to prevent [the acquiring party] from obtaining sufficient market power to raise prices...." *Tugboat, Inc. v.*

*Mobile Towing Co.,* 534 F.2d 1172, 1176 (5th Cir.1976).[2] Obviously, mergers often have an adverse impact on those employees, suppliers, or distributors made redundant by a merger. In many instances, those displaced by a merger suffer an economic loss. However, this loss is not an antitrust injury because it does not flow from that which makes a merger unlawful. Injuries like that suffered by Florida Seed do not "coincide[ ] with the public detriment tending to result from the alleged violation." *Todorov,* 921 F.2d at 1450; *see also* Kenneth L. Glazer and Abbot B. Lipky, Jr., *Unilateral Refusals to Deal Under Section 2 of the Sherman Act,* 63 ANTIT. L.J. 749, 787-90 (1995) (suggesting "per se legality" for manufacturer's efforts to vertically integrate distribution of its own products).

Relying on *Brunswick,* courts have consistently denied standing to distributors who were terminated, or whose contracts were not renewed, following a merger. *See Atlantic Richfield Co. v. USA Petroleum Co.,* 495 U.S. 328, 345, 110 S.Ct. 1884, 1895, 109 L.Ed.2d 333 (1990); *G.K.A. Beverage Corp. v. Honickman,* 55 F.3d 762 (2nd Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 381, 133 L.Ed.2d 304 (1995); *Sierra Wine & Liquor Co. v. Heublein, Inc.,* 626 F.2d 129 (9th Cir.1980); *John Lenore & Co. v. Olympia Brewing Co.,* 550 F.2d 495 (9th Cir.1977); *Universal Brands, Inc. v. Philip Morris, Inc.,* 546 F.2d 30 (5th Cir.1977); *Return on Inv. Systems v. TransLogic Corp.,* 702 F.Supp. 677 (N.D.Ill.1988); *Bryant Heating & Air Conditioning Corp., Inc. v. Carrier Corp.,* 597 F.Supp. 1045, 1051-

---

[2]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

53 (S.D.Fla.1984); *A.G.S. Elecs., Ltd. v. B.S.R. (U.S.A.), Ltd.,* 460 F.Supp. 707, 710 (S.D.N.Y.), *aff'd,* 591 F.2d 1329 (2nd Cir.1978). The teaching of these cases is clear: distributors who are terminated following a merger suffer no antitrust injury. Plaintiffs have not shown why we should treat Florida Seed differently. Florida Seed complains not about higher prices or about injury to competition, but about injury to itself. Thus, Florida Seed has suffered no antitrust injury.[3]

Because we hold that Florida Seed has suffered no antitrust injury, we need not address whether Florida Seed would be an efficient enforcer of the antitrust laws as required by the second prong of our standing analysis. However, it is clear from the

---

[3]Two leading antitrust commentators have addressed whether those displaced by a merger have standing to sue under the antitrust laws.

> Many mergers have been challenged by suppliers (including dealers, franchisees, and employees providing the merging firms with distribution and other services) displaced as a result of the merger. Injury-in-fact may be doubtful when equivalent opportunities are available elsewhere. If other opportunities do not exist [as alleged by Florida Seed], *displaced suppliers made redundant by a merger suffer actual losses but not antitrust injury, for the rationale for condemning a merger lies in its potential for supracompetitive pricing, not in its potential for cost savings and other efficiencies.* A merger that actually brings about supracompetitive prices and diminished output reduces the need for inputs and can therefore injure suppliers. Although such an injury connects more closely with the rationale for finding a violation, it is still not antitrust injury because it is neither the means by which output is restricted nor the direct concern of antitrust rules protecting product market competition.

PHILIP AREEDA & HERBERT HOVENKAMP, *Antitrust Law* ¶ 381 (rev. ed. 1995) (emphasis added). Professors Areeda and Hovenkamp support our view that Florida Seed has suffered no antitrust injury from Monsanto's acquisition of Ortho.

record that Florida Seed is not an efficient enforcer. Florida Seed cannot allege any nexus between the injury it has suffered and a lessening of competition in the United States. In this case, if the injury the antitrust laws address—the power to raise prices and reduce output—has occurred, the proper parties to challenge Monsanto's acquisition of Ortho are direct purchasers in the nonselective herbicide market.

### B. Standing of Frit

Frit is not a customer or competitor in any relevant market, but merely the sole shareholder of Florida Seed and a guarantor of its debt. Plaintiffs allege injury to Florida Seed only, not to Frit. The only injuries allegedly suffered by Frit are as a shareholder and guarantor. Thus, Frit has suffered no antitrust injury. Courts uniformly have held that stockholders, even sole stockholders such as Frit, lack standing to bring an antitrust suit for injury to their corporations. *See, e.g., Lovett v. General Motors Corp.,* 975 F.2d 518 (8th Cir.1992), *rev'd in part,* 998 F.2d 575 (1993), *cert. denied,* 510 U.S. 1113, 114 S.Ct. 1058, 127 L.Ed.2d 378 (1994); *Rand v. Anaconda-Ericsson, Inc.,* 794 F.2d 843, 849 (2nd Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 519, 93 L.Ed.2d 582 (1986); *Bubar v. Ampco Foods, Inc.,* 752 F.2d 445, 450 (9th Cir.), *cert. denied,* 472 U.S. 1018, 105 S.Ct. 3481, 87 L.Ed.2d 616 (1985); *Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 710 (11th Cir.1984); *Harris v. Shell Oil Co.,* 371 F.Supp. 376, 377 (M.D.Ala.1974). We agree with the foregoing cases and hold that Frit has suffered no antitrust injury. Accordingly, the district court properly concluded that Frit did not have

standing under the antitrust laws to challenge Monsanto's acquisition of Ortho.

## V. CONCLUSION

In a recent Seventh Circuit case, Judge Easterbrook wrote that "this is a mundane commercial case, in which a buyer has used the antitrust laws to postpone paying its debts." *Digital Equipment Corp. v. Unig Digital Technologies, Inc.,* 73 F.3d 756, 763 (7th Cir.1996). The same is true here. Simply put, this is not an antitrust case but rather a breach of contract case. Plaintiffs' pursuit of this case has forestalled for almost three years Monsanto's efforts to collect the debt owed it by Plaintiffs. In the words of Judge Easterbrook, the "[t]ime for payment is at hand." *Id.*

We affirm the district court's judgment of dismissal.

AFFIRMED.